1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOHN OLIVER SNOW,

       Petitioner,

  v.

RENEE BAKER, et al.,

       Respondents.

Case No. 2:03-cv-00292-MMD-CWH

ORDER

14 **I. INTRODUCTION**

15    This action is a petition for a writ of habeas corpus by John Oliver Snow, a

16 Nevada prisoner sentenced to death. There are, before the Court, a motion by

17 respondents to dismiss Snow's second amended habeas corpus petition, and a motion

18 by Snow for an evidentiary hearing.  In this order, the Court resolves those motions,

19 granting respondents' motion to dismiss in part and denying it in part, and denying

20 Snow's motion for an evidentiary hearing.

21 **II. BACKGROUND FACTS AND PROCEDURAL HISTORY**

22    The following is the statement of facts and procedural history, as set forth by the

23 Nevada Supreme Court in its 1985 opinion on Snow's direct appeal:

> As the hired assassin in the conspiracy to kill Harry Wham, Snow was
> paid several thousand dollars by the principal members of the conspiracy:
> Peggy Wham, Harry's wife, and her lover, Joseph Douglas Parker (Doug
> Parker). Also involved were Kathy Faltinowski, Peggy's daughter and
> Harry's step-daughter, and John David Parker (John Parker), Kathy's lover
> and the brother of Doug. [Footnote omitted.]
>
> The conspiracy to kill Harry Wham began in the fall of 1982. Kathy
> Faltinowski testified that she overheard a conversation between Doug

Parker and her mother in late November during which Peggy Wham said she wanted her husband killed. Sally Cook, Peggy's sister, testified that Doug Parker told her that he, John Parker and Peggy were going to have Harry Wham killed by hiring someone from back east. This conversation took place between Christmas and New Year's 1982. At that time, Snow shared an apartment at 801 Elizabeth, in Newark, New Jersey, with his common-law wife, Ingrid Smith.

In early January 1983, Kathy Faltinowski drove with John and Doug Parker to Los Angeles and picked up John Biancone at the airport. Biancone also lived in New Jersey. Kathy overheard Doug ask Biancone to murder Harry Wham. Biancone agreed to commit the crime for $5,000 in advance and $5,000 after the murder was completed. Peggy Wham gave Kathy Faltinowski $5,000 to give to Doug. Peggy said she had stolen the money from the safe at the Keyboard Lounge which she owned with Harry Wham. Biancone then left Las Vegas. About one week before January 26, 1983, Kathy Faltinowski saw Biancone who is white, with Snow, who is black, in Las Vegas.

On January 26, 1983, Harry Wham was shot in what appeared to be a robbery. Harry told police that he parked his pick-up on the street near his town house around 11:00 p.m. A black man got out of the passenger side of a nearby car and demanded that Harry get out of his truck, hand over his money, and turn around. Harry thought he saw a white male on the driver's side. The black man then shot Harry in the neck. Harry was injured but spent only twenty-four hours in the hospital. Harry remarked at the time that he did not believe it was a genuine robbery. After the shooting, Doug Parker told Kathy Faltinowski and John Parker that Biancone drove the car the night of January 26 and that Snow shot Harry Wham in the back of the head.

Between January 26 and February 13, 1983, John Parker and Doug Parker told Kathy Faltinowski that Snow and Biancone [footnote omitted] were going to come back and finish the job. During this same period, Sally Cook heard John and Doug talking about how "the man" was impatient and wanted to finish the job. John then said he would call the man and took out a slip of paper that had the words "John Snow" and "New Jersey" written on it, as well as an address or a phone number.

A few days before February 13, 1983, Peggy Wham gave John Parker the key to the Wham garage. When Kathy Faltinowski was present, John and Peggy cleaned out the garage and arranged boxes at the side to form a hiding place. Arlen Edwards, Harry Wham's next door neighbor, testified about the existence of the hiding place immediately after Harry Wham was murdered in the garage.

At 1:30 p.m. on February 13, 1983, Kathy Faltinowski and John Parker drove to the Golden City Motel to pick up Snow. He came out of Room 106. Snow was wearing a dark pinstripe suit. He had a revolver with a silencer on it. The three drove to Peggy and Harry Wham's town house on Pecos Way in Las Vegas. John unlocked the Whams' garage door using the key given him by Peggy. Snow put on rubber gloves and hid behind the boxes. John and Kathy Faltinowski left the Whams around 2:00 p.m.

2

Arlen and Jody Edwards lived in the town house next door to the Whams. At 4:20 p.m. on February 13, 1983, Arlen and Jody walked out of their house and into their garage. They both heard "popping" noises and then saw a black man in a dark suit run from the Wham garage. Arlen saw only part of the man's face and could not identify Snow as that man. Arlen chased the man and lost sight of him as he ran across a desert area toward the Wagon Wheel Apartments on Pecos Road. Kathy Faltinowski lived in the Wagon Wheel Apartments about four blocks from the Wham town house.

At Snow's trial, Jody Edwards testified that she saw all of the black man's face as he paused just outside the Whams' garage. She identified Snow as that man in court. Jody admitted that she testified at the previous trial of Peggy Wham that she could not identify the man who ran from the garage. Jody testified that she had lied before because she had been threatened by Peggy and by Kathy Faltinowski.

Immediately after the shooting on February 13, 1983, Arlen Edwards found Harry Wham sitting in his car bleeding heavily. Harry died before the paramedics arrived. His death was due to multiple gunshot wounds in the face and head.

Around 4:30 p.m., on February 13, 1983, John Parker and Kathy Faltinowski were driving down Pecos Road. They saw Snow running towards Kathy's apartment. They returned to the apartment joining Sally Cook who was also there. Sally testified that a few minutes later a black man in a dark suit burst in demanding a ride. John asked Sally to give the black man, whom he called John Snow, a ride. Sally refused. Kathy Faltinowski drove Snow back to the Golden City Motel. During the drive, Snow told Kathy that he had just shot her stepfather.

On February 16, 1983, Sally Cook spoke with a friend about the Wham murder. The friend, Richard Hansen, advised her to go to the police but Sally would not. Hansen reported this to the police. Hansen agreed to wear a microphone and transmitting device when she next spoke with Sally. The police taped a subsequent conversation between him and Sally. As a result of this conversation, the police arrested Peggy Wham, Kathy Faltinowski, John and Doug Parker on the afternoon on February 17, 1983.

In the morning of February 17, 1983, Doug Parker told Sally Cook that he had just given the hit man $7,000 and that the hit man was on his way to San Francisco. Snow himself testified that he flew from Las Vegas to San Francisco on that date. From a pay phone at the San Francisco airport, a call was made just after twelve noon that day to the home of the parents of the Parker brothers. The call was charged to the telephone at 801 Elizabeth, Snow's apartment in Newark, New Jersey. The mother of Doug and John Parker testified that she answered the telephone in her home in the early afternoon of February 17, 1983. The caller left a message asking Doug to get in touch with Johnny. Another call shortly after the first was placed from the same pay phone at the San Francisco airport and was charged to the same number in New Jersey. This call was made to a friend of Snow's, Olivia Burnett, living in Fairfield, California. Burnett testified that Snow called her that day to come pick him up at the airport.

Police investigators obtained additional information from Sally Cook which lead to Snow being indicted for Harry Wham's murder. A warrant for Snow's arrest was issued and programmed into the National Crime Information computer. On March 4, 1983, Snow was arraigned in Superior Court in New Jersey on unrelated charges. He was fingerprinted. Snow's fingerprints called up the Nevada arrest warrant from the computer. As a result, Snow was arrested and booked for the murder of Harry Wham.

Snow denied knowing either Doug or John Parker. In his wallet when Snow was arrested was a piece of paper with "Doug" on it and the telephone number of the home of the Parkers' parents. Snow also told police that the last time he had been in Las Vegas was in 1966 or 1967. At trial, evidence was introduced that Snow's fingerprint had been found in Room 106 at the Golden City Motel on February 17, 1983. Witnesses from the motel identified Snow as the man who stayed in Room 106 for several days in February 1983.

Snow was charged with conspiracy to commit murder, first degree murder with use of a deadly weapon and attempted murder. He was convicted of conspiracy to commit murder and first degree murder with use of a deadly weapon. At the penalty hearing on the first degree murder conviction, the State produced evidence that Snow pleaded guilty in 1962 to robbing three victims in separate incidents. Following the penalty hearing, the jury returned a verdict finding three aggravating circumstances: that the murder was committed by a person previously convicted of a crime involving the use or threat of violence; that the murder was committed during the commission or attempt of a burglary; that the murder was committed for the purpose of receiving money or other things of monetary value. The jury found no mitigating circumstances and sentenced Snow to death.

*Snow v. State*, 101 Nev. 439, 441-44, 705 P.2d 632, 634-37 (1985). The Nevada Supreme Court affirmed Snow's conviction and sentence on August 28, 1985. *Snow*, 101 Nev. at 449, 705 P.2d at 639. The United States Supreme Court denied certiorari on February 24, 1986. *Snow v. Nevada*, 475 U.S. 1031 (1986).

Snow filed his first state habeas corpus petition on February 24, 1989. Respondents' Exhibit 4.[1] The state district court denied that petition on November 19, 1986. Respondents' Exhibit 5. Snow appealed. Respondents' Exhibits 6a, 6b. On August 27, 1987, the Nevada Supreme Court affirmed the denial of the petition, and ordered the appeal dismissed. Respondents' Exhibit 7. The United States Supreme

---

[1]The exhibits identified in this order as "Respondents' Exhibits" were filed by respondents in support of their motion to dismiss and are found in the record at dkt. no. 147. The exhibits identified in this order as "Petitioner's Exhibits" were filed by Snow and are found in the record at dkt. nos. 116, 138, and 158.

1    Court denied Snow's petition for certiorari on November 30, 1987.  *Snow v. Sumner*,

2    484 U.S. 970 (1987).

3          On November 12, 1987, Snow filed, in the state district court, a motion for a new

4    trial based on his alleged discovery of new evidence.  The state district court denied that

5    motion on procedural grounds on November 17, 1987, and the Nevada Supreme Court

6    affirmed on September 6, 1989.  Respondents' Exhibit 8; *Snow v. State*, 105 Nev. 521,

7    779 P.2d 96 (1989).

8          On December 22, 1987, Snow filed his first federal habeas corpus action, and

9    that case was assigned case number CV-N-870615-ECR. Snow voluntarily dismissed

10   that action on August 3, 1988.

11         On December 28, 1989, Snow filed his second state habeas petition.

12   Respondents' Exhibit 9.  The state district court conducted an evidentiary hearing and

13   then denied that petition on December 8, 1992.  Respondents' Exhibit 10.  On March

14   19, 1993, the Nevada Supreme Court dismissed Snow's appeal from that ruling.

15   Respondents' Exhibit 11.

16         On March 21, 1994, Snow initiated his second federal habeas corpus action, and

17   that action was designated case number CV-S-94-0278-PMP-LRL. That action was

18   dismissed on March 20, 1997.  *See* Petitioner's Exhibits 233, 234.

19         On April 16, 1997, Snow filed his third state habeas corpus petition.

20   Respondents' Exhibit 12.  The state district court denied that petition, as procedurally

21   barred, on March 25, 2002. Respondents' Exhibit 17. The Nevada Supreme Court

22   affirmed that ruling on December 10, 2002.  Respondents' Exhibit 19.

23         On October 22, 1997, Snow filed, in the state district court, a supplemental

24   motion for a new trial, based upon alleged juror misconduct, and that motion was denied

25   by the state district court on December 31, 1997. *See* Respondents' Exhibit 17, p. 4.

26         On March 13, 2003, Snow initiated this, his third, federal habeas corpus action

27   (Case Number 2:03-cv-00292-MMD-CWH).  Counsel was appointed to represent Snow

28   (dkt. nos. 4, 9, 12, 14, 18, 19). Snow conducted discovery and, on November 26, 2007,

he filed a first amended habeas petition (dkt. no. 115). On April 14, 2008, upon a stipulation of the parties, this action was stayed to allow Snow to return to state court to further exhaust his claims (dkt. nos. 121, 122).

On April 25, 2008, Snow initiated his fourth state habeas action. Respondents' Exhibits 20a, 20b. That petition was dismissed by the state district court on April 23, 2009. Respondents' Exhibit 22. Snow appealed. Respondents' Exhibit 23. On July 27, 2011, the Nevada Supreme Court affirmed. Respondents' Exhibit 24.

On January 4, 2012, the stay of this federal habeas action was lifted (dkt. no. 134). On March 9, 2012, Snow filed a second amended habeas petition (dkt. no. 137).

On August 31, 2012, respondents filed their motion to dismiss (dkt. no. 146). Snow filed an opposition to that motion on January 3, 2013 (dkt. no. 157). Respondents replied on April 2, 2013 (dkt. no. 165). Snow filed corrections to his opposition to the motion on May 28, 2013 (dkt. nos. 169, 170).

On January 3, 2013, when he filed his opposition to the motion to dismiss, Snow also filed a motion for evidentiary hearing (dkt. no. 159). Respondents filed an opposition to that motion on April 2, 2013 (dkt. no. 166). Snow filed a reply in support of the motion for evidentiary hearing on May 28, 2013 (dkt. no. 171).

## III.   STATUTE OF LIMITATIONS

### A.   Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations applicable to federal habeas corpus petitions. The statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).

The petitioner is entitled to statutory tolling of the limitations period while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The AEDPA limitations period is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130, 145 (2010). A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Respondents argue that Snow's entire second amended petition is barred by the statute of limitations and should be dismissed.

**B.    Expiration Of The One-Year Limitations Period**

Snow's conviction became final before the AEDPA became effective on April 24, 1996. *See Snow v. Nevada*, 475 U.S. 1031 (1986) (United States Supreme Court's denial of certiorari, on February 24, 1986, following Snow's direct appeal). For such a petitioner, with a conviction that became final prior to the effective date of the AEDPA, the one-year limitations period for federal habeas claims began to run on the effective date of the AEDPA, April 24, 1996, unless tolled − either equitably tolled or tolled by the pendency of a properly filed state action under 28 U.S.C. § 2244(d)(2) − or unless another triggering date applies under 28 U.S.C. § 2244(d)(1)(B), (C) or (D). *See Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001).

1   Snow initiated this federal habeas action on March 13, 2003. *See* Petition for Writ

2   of Habeas Corpus (dkt. no. 10) (received March 13, 2003). That was more than six

3   years after the AEDPA limitations period began to run, without tolling or an alternative

4   triggering date.

5   Snow argues that the March 20, 1997, "closure order" in his prior federal habeas

6   action, Case Number CV-S-94-0278-PMP-LRL, "constitutes a stay rather than a

7   dismissal of the 1994 federal habeas proceeding," that this current federal habeas

8   action is, in reality, the same action as Case Number CV-S-94-0278-PMP-LRL, and that

9   this action should, therefore, be considered to have been filed in 1994, well before the

10  one-year limitations period began to run. *See* Opposition to Motion to Dismiss (dkt. no.

11  157), pp. 1-9. That argument is without merit. The March 27, 1997, order did not merely

12  administratively close Case Number CV-S-94-0278-PMP-LRL; rather, the court ordered

13  Case Number CV-S-94-0278-PMP-LRL "dismissed without prejudice." *See* Petitioner's

14  Exhibits 233, 234. The March 20, 1997, order was therefore not a "closure order;" it was

15  an order of dismissal. There is no language in the March 20, 1997, order suggesting

16  that Case Number CV-S-94-0278-PMP-LRL was to be closed subject to reopening, or

17  otherwise stayed. *See id*. The record is clear that Case Number CV-S-94-0278-PMP-

18  LRL was dismissed on March 20, 1997. This current federal habeas corpus action was

19  initiated about six (6) years later, on March 13, 2003.

20  Therefore, all the claims made by Snow in this action, which was filed over six (6)

21  years after the effective date of the AEDPA, are barred by the statute of limitations,

22  absent tolling, or unless another triggering date is applicable under 28 U.S.C. §

23  2244(d)(1)(B), (C) or (D).

24  **C.   Statutory Tolling**

25  Under the AEDPA, "[t]he time during which a properly filed application for State

26  post-conviction or other collateral review . . . is pending shall not be counted toward any

27  period of limitation . . . ." 28 U.S.C. § 2244(d)(2).  While Snow did participate in state

28  proceedings, the timing of these proceedings does not trigger statutory tolling.

1    On the effective date of the AEDPA, April 24, 1996, when the one-year limitations

2    would have begun to run, Snow was litigating his second federal habeas action.  That

3    federal habeas action, Case Number CV-S-94-0278-PMP-LRL, was filed on March 21,

4    1994, and was dismissed on March 20, 1997, a little over a month before the one-year

5    limitations period would have run out. The pendency of a federal habeas action,

6    however, does not toll the statute of limitations, under 28 U.S.C. § 2244(d)(2).  *Duncan*

7    *v. Walker*, 533 U.S. 167 (2001).

8    About a week before the one-year limitations period was to run out, Snow

9    initiated a third state habeas action on April 16, 1997. *See* Respondents' Exhibit 12.

10   The state district court denied that petition on March 25, 2002, ruling that it was untimely

11   under NRS 34.726(1), and barred as a successive petition under NRS 34.810.

12   Respondents' Exhibit 17.  The Nevada Supreme Court affirmed that ruling on December

13   10, 2002.  Respondents' Exhibit 19.  When "the state court reject[s]" a petition for post-

14   conviction relief "as untimely, it [is] not 'properly filed'" and does not toll the limitations

15   period. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

16   Therefore, Snow does not benefit from statutory tolling under 28 U.S.C. §

17   2244(d)(2).

18       **D.    Equitable Tolling**

19   A petitioner may be entitled to equitable tolling if he can show "'(1) that he has

20   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

21   in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (*quoting Pace*, 544

22   U.S. at 418).  The Court finds that equitable tolling applies.

23   The dismissal of Snow's 1994 federal habeas corpus action, Case Number CV-

24   S-94-0278-PMP-LRL, occurred just as the AEDPA was going into effect. Indeed the

25   motion to dismiss was filed and briefed before the April 24, 2006, effective date of the

26   AEDPA.  After supplemental briefing, regarding, among other things, the applicability of

27   the AEDPA to the 1994 case, the case was dismissed on March 20, 1997, less than a

28   year after the AEDPA went into effect.  Because the motion to dismiss in Case Number

CV-S-94-0278-PMP-LRL was resolved when the AEDPA was new, there appears to have been no awareness, on the part of the litigants or the Court, that the statute of limitations imposed by the AEDPA could pose a bar to Snow's filing of a new federal habeas action. The Supreme Court had not yet decided *Duncan* (holding that there is no statutory tolling under 28 U.S.C. § 2244(d)(2) during the pendency of a federal habeas action), or *Pace* (holding that there is no statutory tolling under 28 U.S.C. § 2244(d)(2) during the pendency of an untimely-filed state post-conviction proceeding). Because there was no awareness of the possibility that the AEDPA statute of limitations could bar a subsequent federal habeas action, the Court did not extend to Snow the option to abandon his unexhausted claims and proceed on his exhausted claims, or seek a stay. *See Jefferson v. Budge*, 419 F.3d 1013 (9th Cir.2005) (granting *pro se* petitioner equitable tolling from the dismissal of prior federal habeas action to the initiation of subsequent federal habeas action, where court did not give petitioner the option of abandoning unexhausted claims).

The danger that Snow might be barred by the statute of limitations from filing a subsequent federal habeas petition, if his 1994 action was dismissed, was not mentioned in the parties' briefing of the motion to dismiss, and it was not mentioned in the March 20, 1997, order of the Court dismissing the action. *See* Petitioner's Exhibit 233. Indeed, in the March 20, 1997, order, the court appears to have assumed that there would be no statute-of-limitations bar to the filing of a subsequent federal habeas action after the exhaustion of claims in state court. *Id*. For example, at the end of the order, the Court stated: "*When the subsequent federal proceeding is commenced*, a copy of this order shall be attached to the petition." *Id*. at 3 (emphasis added).

There is no indication in the record that, with respect to the dismissal of the 1994 federal habeas action, or during the pendency of his third state habeas action, Snow was ever other than diligent in pursuing his rights. And, the Court concludes that, in view of the unsettled and uncertain law in 1996 and 1997 regarding the operation of the AEDPA statute of limitations, combined with the Court's assumption, and indication, that

1   Snow would be able to initiate a subsequent federal habeas action after exhausting his

2   claims in state court, there were extraordinary circumstances that combined, without

3   fault on Snow's part, to present a statute of limitations bar to this action.

4        The Court, therefore, will grant Snow equitable tolling of the AEDPA limitations

5   period from March 20, 1997, when his 1994 federal habeas action was dismissed, to

6   March 13, 2003, when this, Snow's third, federal habeas action was initiated.

7   *See Jefferson*, 419 F.3d at 1017 (under similar circumstances, granting equitable tolling

8   "from the date the first habeas petition was dismissed until the date he filed his second

9   habeas petition").

10       **E.     Claim-by-Claim Statute of Limitations Analysis**

11       With the benefit of equitable tolling from March 20, 1997, to March 13, 2003,

12  Snow's original petition in this action (dkt. no. 10) was timely filed, within the one-year

13  AEDPA limitations period.   When the equitable tolling began, on March 20, 1997, there

14  were only thirty-five (35) days left in the limitations period, as the limitations period was

15  to expire on April 24, 1997. *See Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir.

16  2001).  After the equitable tolling ceased, on March 13, 2003, those remaining thirty-five

17  (35) days of the limitations period ran out on April 17, 2003. Therefore, Snow's first

18  amended petition (dkt. no. 115), filed November 26, 2007, and his second amended

19  petition (dkt. no. 137), filed March 9, 2012, were filed well after the limitations period

20  expired.

21       Snow argues, however, that certain of the claims in his second amended petition

22  (1) qualify separately for tolling, relate back to claims in his original March 10, 2003,

23  petition or are timely, under 28 U.S.C. § 2244(d)(1)(B), because of a state-created

24  impediment to the raising of the claims; or (2) are timely, under 28 U.S.C. §

25  2244(d)(1)(D), because of his later discovery of the factual predicates of the claims.

26  The remainder of the statute of limitations analysis in this order, then, is a consideration

27  of the timeliness of each of the claims in Snow's second amended petition, given that

28  the Court finds Snow entitled to equitable tolling from March 20, 1997, to March 13,

1    2003, and in light of Snow's claim-specific arguments that his claims should be treated

2    as timely.

3                  **1.**      **Claim 1**

4         In Claim 1, Snow claims that his constitutional rights were violated "due to the

5    state's failure to disclose material exculpatory and impeachment information, to the

6    state's elicitation of false testimony from its witnesses, to the state's failure to correct the

7    false testimony of its witnesses, and to a persistent pattern of misconduct by the state

8    which distorted the fact-finding process and rendered Mr. Snow's trial fundamentally

9    unfair." Second Amended Petition, p. 11. Claim 1 includes several subparts. *See id.* at

10    11-41. In Claim 1A, Snow alleges that "the prosecution failed to disclose material

11    impeachment information and failed to correct false testimony regarding undisclosed

12    benefits received by state's witness Richard Morelli." *Id.* at 14. In Claim 1B, Snow

13    alleges that "the state failed to disclose material exculpatory and impeachment

14    information pertaining to Kathy Faltinowski, the only testifying co-conspirator who

15    purportedly could identify Mr. Snow as the hit man who killed Harry Wham." *Id.* at 22.

16    In Claim 1C, Snow alleges that "the state failed to disclose material exculpatory and

17    impeachment evidence relating to Arlen and Jody Edwards." *Id.* at 26. In Claim 1D,

18    Snow alleges that "the state failed to disclose material exculpatory and impeachment

19    information relating to Melinda Barwick." *Id.* at 29. In Claim 1E, Snow alleges that "the

20    state failed to disclose material exculpatory and impeachment evidence from

21    information generated by law enforcement that could have been used to show that the

22    police failed to adequately investigate alternative suspects in the offense." *Id.* at 30. In

23    Claim 1, there are also sections designated F and G, but the material in those sections

24    does not appear to set forth separate subclaims, but rather, appears to include

25    argument relative to Claims 1A, 1B, 1C, 1D, and 1E.

26         Claims in an amended petition for writ of habeas corpus relate back to the

27    original petition, under Federal Rule of Civil Procedure 15(c), if they arise out of "a

28    common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*

1    *v. Felix*, 545 U.S. 644, 659 (2005). "An amended habeas petition . . . does not relate

2    back . . . when it asserts a new ground for relief supported by facts that differ in both

3    time and type from those the original pleading set forth." *Id*. at 650.

4        The Court finds that all of Claims 1A, 1B, 1C, 1D, and 1E relate back to Grounds

5    25 and 28 in Snow's original petition. *See* Petition for Writ of Habeas Corpus (dkt. no.

6    10), Grounds 25, 28. Grounds 25 and 28 of Snow's original petition asserted that the

7    prosecution withheld exculpatory and impeachment evidence. Claims 1A, 1B, 1C, 1D,

8    and 1E, involve the same "core of operative facts" as those claims in the original

9    petition. *See Mayle*, 545 U.S. at 664 n.7 (*citing*, with approval, *Mandacina v. United*

10    *States*, 328 F.3d 995, 1000-01 (8th Cir.2003)); *see also Valdovinos v. McGrath*, 598

11    F.3d 568, 575 (9th Cir.2010), *vacated on other grounds*, —— U.S. ——, 131 S.Ct. 1042,

12    178 L.Ed.2d 860 (2011) (judgment vacated and case remanded for further consideration

13    in light of *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)).

14    Claims 1A, 1B, 1C, 1D, and 1E, therefore, are not barred by the statute of limitations.

15        **2.**    **Claim 2**

16        In Claim 2, Snow claims that his constitutional rights were violated "due to the

17    state's actions in sending Richard Morelli, an agent of the government, into the jail to

18    obtain incriminating statements from Mr. Snow in violation of his right to counsel."

19    Second Amended Petition, p. 42.

20        There is no claim in Snow's original petition based on the same core of operative

21    facts as Claim 2. *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore, this

22    claim does not relate back to Snow's original petition.

23        Snow claims, however, that Claim 2 is independently timely, and subject to

24    equitable tolling, because the State suppressed, and he was delayed in discovering, the

25    facts underlying the claim. However, it is apparent from the record that no later than

26    March 22, 2004, Snow learned of the facts on which he bases Claim 2. *See* Motion for

27    Leave to Conduct Discovery (dkt. no. 32), pp. 17-21. Snow does not assert any valid

28    reason for waiting for more than three years, after discovering the factual basis for

1   Claim 2, before pleading that claim in this action. The Court, therefore, rejects Snow's

2   argument that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(B) or (D) with regard

3   to Claim 2.

4       Snow also claims that discovery proceedings in this case delayed his filing of an

5   amended petition including Claim 2.  *See* Opposition to Motion to Dismiss, p. 23.  Citing

6   an order entered by the court in this action on October 8, 2003 (dkt. no. 22), Snow

7   argues: "Under this Court's scheduling orders, Mr. Snow was required to conduct and

8   complete formal discovery before filing an amended petition."  *Id*.  However, the October

9   8, 2003, order did not require Snow to complete his discovery before filing an amended

10  petition.  Rather, the order stated: "If necessary, petitioner shall file an amended petition

11  on or before September 10, 2004."  Order entered October 8, 2003 (dkt. no. 22), p. 2.

12  There was no order of the Court precluding the filing of an amended petition before the

13  completion of the discovery proceedings, or without conducting any discovery at all. The

14  Court rejects Snow's argument that he is entitled to equitable tolling with regard to

15  Claim 2.

16      Claim 2 is barred by the statute of limitations.

17          **3.    Claim 3**

18      In Claim 3, Snow claims that his constitutional rights were violated "because his

19  death sentence is disproportionate to that of his co-defendants, being the product of

20  racial discrimination by state officials." Second Amended Petition, p. 45. The Court finds

21  that Claim 3 is based on the same core of operative facts as Grounds 8 and 24 of

22  Snow's original petition.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Grounds

23  8, 24.  Claim 3, therefore, relates back to Snow's original petition, and is not barred by

24  the statute of limitations.

25          **4.    Claim 4**

26      In Claim 4, Snow claims that his constitutional rights were violated "due to the

27  seating of jurors on Mr. Snow's jury who were not impartial."  Second Amended Petition,

28  p. 62.  This claim concerns jurors Lorraine Van Compernolle and Dorothy Hansen.  *Id*.

1  at 62-69.  The Court finds that Claim 4 is based on the same core of operative facts as

2  Ground 19 of Snow's original petition.  *See* Petition for Writ of Habeas Corpus (dkt. no.

3  10), Ground 19.  Claim 4, therefore, relates back to Snow's original petition, and is not

4  barred by the statute of limitations.

5            **5.**    **Claim 5**

6       In Claim 5, Snow claims that his constitutional rights were violated "due to the

7  trial court's failure to remove juror Gordon Buchanan, who was actually and impliedly

8  biased against Mr. Snow, and who contaminated the jury with extraneous information."

9  Second Amended Petition, p. 70.

10       There is no claim in Snow's original petition based on the same core of operative

11  facts as Claim 5.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore this

12  claim does not relate back to Snow's original petition.

13       Snow claims that Claim 5 is independently timely because of his late discovery of

14  the factual basis for the claim. *See* Opposition to Motion to Dismiss, pp. 24-26.

15  However, in the course of that argument, Snow concedes that he discovered the factual

16  basis for the claim when "he obtained a declaration from Buchanan signed on October

17  31, 2005." *Id.* at 24. That was more than two (2) years before this claim appeared in any

18  petition in this action; this claim first appeared in Snow's first amended petition, which

19  was filed November 26, 2007.  Snow does not assert any valid reason for waiting more

20  than two (2) years after discovering the factual basis for Claim 5 before pleading that

21  claim in this action.  The Court rejects Snow's argument that he is entitled to relief under

22  28 U.S.C. § 2244(d)(1)(D) with regard to Claim 5. Claim 5 is barred by the statute of

23  limitations.

24            **6.**    **Claim 6**

25       In Claim 6, Snow claims that his constitutional rights were violated "due to

26  manipulation during the grand jury selection process which deprived Mr. Snow of his

27  right to a fair cross-section of the community."  Second Amended Petition, p. 78.

28  ///

1    There is no claim in Snow's original petition based on the same core of operative

2    facts as Claim 6.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore this

3    claim does not relate back to Snow's original petition.

4    Snow claims that Claim 6 is independently timely because of his late discovery of

5    the factual basis for the claim. *See* Opposition to Motion to Dismiss, pp. 26-27.

6    However, Snow concedes that he discovered the factual basis for the claim on January

7    6, 2004.  *Id*. at 26 ("The FPD did not receive disclosure of responsive records from the

8    District Attorney until January 6, 2004."); *see also id*. at 53-54 (stating that the FPD had

9    "fully developed" the factual basis for Claim 6 by August 2004). That was more than

10   three (3) years before this claim appeared in any petition in this action; it first appeared

11   in the first amended petition, which was filed November 26, 2007.  Snow does not

12   assert any valid reason for waiting for more than three (3) years after discovering the

13   factual basis for Claim 6 before pleading that claim in this action. The Court, therefore,

14   rejects Snow's argument that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D)

15   with regard to Claim 6.  Claim 6 is barred by the statute of limitations.

16   ### 7.    Claim 7

17   In Claim 7, Snow claims that his constitutional rights were violated "due to his

18   trial, conviction and sentencing by a jury selected from a venire in which members of his

19   race were systematically excluded and under-represented."  Second Amended Petition,

20   p. 81. The Court finds that Claim 7 is based on the same core of operative facts as

21   Ground 7 of Snow's original petition. *See* Petition for Writ of Habeas Corpus (dkt. no.

22   10), Ground 7.  Claim 7, therefore, relates back to Snow's original petition, and is not

23   barred by the statute of limitations.

24   ### 8.    Claim 8

25   In Claim 8, Snow claims that his constitutional rights were violated "due to

26   improper arguments by the prosecution which distorted the fact finding process and

27   rendered the trial fundamentally unfair." Second Amended Petition, p. 84.  The Court

28   finds that Claim 8 is based on the same core of operative facts as Ground 21 of Snow's

1  original petition. *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 21. Claim
2  8, therefore, relates back to Snow's original petition, and is not barred by the statute of
3  limitations.

4           **9.**    **Claim 9**

5       In Claim 9, Snow claims that his constitutional rights were violated "due to the
6  trial court's exclusion of the exculpatory testimony from Terry Hardaway and David
7  Springfield." Second Amended Petition, p. 90.  The Court finds that Claim 9 is based on
8  the same core of operative facts as Ground 1 of Snow's original petition. *See* Petition
9  for Writ of Habeas Corpus (dkt. no. 10), Ground 1.  Claim 9, therefore, relates back to
10  Snow's original petition, and is not barred by the statute of limitations.

11          **10.**    **Claim 10**

12       In Claim 10, Snow claims that his constitutional rights were violated "due to the
13  ineffective assistance of trial counsel during the pretrial, trial, sentencing, and post-trial
14  proceedings of Mr. Snow's trial."  Second Amended Petition, p. 93. Claim 10 includes
15  several subparts. *See id.* at 93-130.

16       In Claim 10A, Snow claims that his trial counsel "was ineffective for failing to
17  conduct adequate voir dire." Second Amended Petition, p. 93. The Court finds that
18  Claim 10A is based on the same core of operative facts as Ground 15 of Snow's original
19  petition. *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 15. Claim 10A,
20  therefore, relates back to Snow's original petition, and is not barred by the statute of
21  limitations.

22       In Claim 10B, Snow claims that his trial counsel was ineffective for "completely
23  abandoning his role as advocate for Mr. Snow" during penalty phase closing arguments.
24  Second Amended Petition, p. 100. There is no claim in Snow's original petition based
25  on the same core of operative facts as Claim 10B. *See* Petition for Writ of Habeas
26  Corpus (dkt. no. 10). Therefore this claim does not relate back to Snow's original
27  petition. Snow does not assert any other basis upon which Claim 10B might be
28  considered timely.  Claim 10B, therefore, is barred by the statute of limitations.

1    In Claim 10C, Snow claims that his trial counsel was ineffective "for failing to
2   object and offer rebuttal evidence to in-court identifications of Mr. Snow which were the
3   result of impermissibly suggestive photo spreads and unreliable cross-racial
4   identifications." Second Amended Petition, p. 104. The Court finds that Claim 10C is
5   based on the same core of operative facts as Ground 5 of Snow's original petition.
6   *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 5. Claim 10C, therefore,
7   relates back to Snow's original petition, and is not barred by the statute of limitations.

8    In Claim 10D, Snow claims that his trial counsel was ineffective "for failing to offer
9   alternative grounds for the admission of the testimony of Mr. Hardaway and Mr.
10  Springfield, and for failing to offer their testimony at the penalty phase." Second
11  Amended Petition, p. 108. The Court finds that Claim 10D is based on the same core of
12  operative facts as Grounds 1 and 2 of Snow's original petition.  *See* Petition for Writ of
13  Habeas Corpus (dkt. no. 10), Grounds 1, 2. Claim 10D, therefore, relates back to
14  Snow's original petition, and is not barred by the statute of limitations.

15   In Claim 10E, Snow claims that his trial counsel was ineffective "for failing to
16  investigate and call potential alibi witnesses who could have corroborated Mr. Snow's
17  own testimony that he was not in Nevada on the day Harry Wham was killed." Second
18  Amended Petition, p. 112. The Court finds that Claim 10E is based on the same core of
19  operative facts as Ground 3 of Snow's original petition.  *See* Petition for Writ of Habeas
20  Corpus (dkt. no. 10), Ground 3.  Claim 10E, therefore, relates back to Snow's original
21  petition, and is not barred by the statute of limitations.

22   In Claim 10F, Snow claims that his trial counsel was ineffective "for failing to
23  properly object and move for a hearing regarding *ex parte* communications and
24  misconduct by juror Buchanan." Second Amended Petition, p. 114. There is no claim in
25  Snow's original petition based on the same core of operative facts as Claim 10F.
26  *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore this claim does not
27  relate back to Snow's original petition.  Snow claims that Claim 10F is independently
28  timely because of his late discovery of the factual basis for the claim.  *See* Opposition to

Motion to Dismiss, pp. 24-26. However, in the course of that argument, Snow concedes that he discovered the factual basis for this claim when "he obtained a declaration from Buchanan signed on October 31, 2005." *Id*. at 24.  That was more than two (2) years before this claim appeared in any petition in this action; the claim first appeared in the first amended petition, which was filed November 26, 2007.  Snow does not assert any valid reason for waiting more than two (2) years after discovering the factual basis for Claim 10F before pleading that claim in this action.  The Court, therefore, rejects Snow's argument that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D) with regard to Claim 10F.  Claim 10F is barred by the statute of limitations.

In Claim 10G, Snow claims that his trial counsel was ineffective "for failing to locate and present records to prove that Mr. Snow received a large settlement in a car accident lawsuit." Second Amended Petition, p. 114. There is no claim in Snow's original petition based on the same core of operative facts as Claim 10G. *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore this claim does not relate back to Snow's original petition.  Snow does not assert any other basis upon which Claim 10G might be considered timely.  Claim 10G, therefore, is barred by the statute of limitations.

In Claim 10H, Snow claims that his trial counsel was ineffective "for failing to impeach Sally Cook's testimony regarding the height of the hit man."  Second Amended Petition, p. 115.  The Court finds that this claim shares a common core of operative fact with Ground 5 of Snow's original petition, in which he claimed that his trial counsel was ineffective, in part as follows:

> [T]rial counsel failed to cross-examine any of the witnesses (especially Jody Edwards) relative to the cross-racial identification issue, failed to present any expert testimony relative to the frailties and vicissitudes of cross-racial identification, and failed even to request a jury instruction as to the difficulties of ... eyewitness identification in general, and cross-racial identification in specific.

Petition for Writ of Habeas Corpus (dkt. no. 10), p. 12 of attachment.  Claim 10H relates back to Snow's original petition, and is not barred by the statute of limitations.

///

1      In Claim 10I, Snow claims that his trial counsel was ineffective "for failing to

2   impeach Ms. Faltinowski's testimony regarding the ride that she allegedly gave Mr.

3   Snow to the Golden City Motel immediately after the crime." Second Amended Petition,

4   p. 116. There is no claim in Snow's original petition based on the same core of

5   operative facts as Claim 10I. *See* Petition for Writ of Habeas Corpus (dkt. no. 10).

6   Snow argues that this claim shares a common core of operative fact with Ground 5 of

7   his original petition. *See* Opposition to Motion to Dismiss, pp. 37-38. However, Ground

8   5 of the original petition has nothing in common, factually, with Ground 10I. *See* Petition

9   for Writ of Habeas Corpus (dkt. no. 10), pages 11-12 of attachment. Ground 10I does

10  not relate back to Snow's original petition, and is barred by the statute of limitations.

11     In Claim 10J, Snow claims that his trial counsel was ineffective "for failing to

12  adequately cross-examine Detective Dillard and impeach important aspects of his

13  testimony." Second Amended Petition, p. 116. There is no claim in Snow's original

14  petition based on the same core of operative facts as Claim 10J. *See* Petition for Writ

15  of Habeas Corpus (dkt. no. 10). Therefore this claim does not relate back to Snow's

16  original petition. Snow does not assert any other basis upon which Claim 10J might be

17  considered timely. Claim 10J, therefore, is barred by the statute of limitations.

18     In Claim 10K, Snow claims that his trial counsel was ineffective "for failing to

19  investigate or present any mitigating evidence at Mr. Snow's capital sentencing

20  hearing." Second Amended Petition, p. 120. The Court finds that Claim 10K is based

21  on the same core of operative facts as Ground 4 of Snow's original petition.

22  *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 4. Claim 10K, therefore,

23  relates back to Snow's original petition, and is not barred by the statute of limitations.

24     In Claim 10L, Snow claims that his trial counsel was ineffective "for failing to

25  object to the guilt phase jury instructions regarding premeditation, implied malice, and

26  reasonable doubt," as well as "the penalty phase instructions preventing the jury from

27  considering sympathy and the improper instruction which failed to apprise the jury that it

28  had to unanimously find at least one statutory aggravating circumstance." Second

1    Amended Petition, pp. 127-28. The Court finds that, to the extent it involves the jury

2    instructions regarding implied malice, reasonable doubt, and sympathy, Claim 10L is

3    based on the same core of operative facts as Grounds 13, 18, and 26 of Snow's original

4    petition. *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Grounds 13, 18, 26.

5    However, to the extent that Claim 10L involves the jury instructions regarding

6    premeditation and the requirement that aggravating circumstances be found

7    unanimously by the jury, the Court finds that there is no claim in Snow's original petition

8    based on the same core of operative facts as those claims.  Therefore, Claim 10L does

9    not relate back to Snow's original petition and is barred by the statute of limitations, to

10   the extent it involves the jury instructions regarding premeditation and the requirement

11   that aggravating circumstances be found unanimously by the jury; the remainder of

12   Claim 10L relates back, and is not barred by the statute of limitations.

13        In Claim 10M, Snow claims that his trial counsel was ineffective for "failing to

14   object to the penalty phase jury instruction which told the jury that they could not

15   consider sympathy for Mr. Snow in selecting a sentence less than death," for "failing to

16   object to the penalty phase jury instruction which failed to inform the jury that they had

17   to unanimously find one or more statutory aggravating circumstances," and for "failing to

18   object to the penalty phase jury instruction which allowed the jury to find that Mr. Snow's

19   crime was aggravated because it was committed during the course of a burglary."

20   Second Amended Petition, pp. 128-29.[2]  The Court finds that, to the extent it involves

21   the jury instructions regarding sympathy, and regarding the burglary aggravating

22   circumstance, Claim 10M is based on the same core of operative facts as Grounds 12

23   and 18 of Snow's original petition.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10),

24   Grounds 12, 18.  However, to the extent that Claim 10M involves the lack of a jury

25   instruction regarding the requirement that aggravating circumstances be found

26

27        [2]Claim 10M is repetitive of Claim 10L to the extent it challenges the no-sympathy
     instruction, and to the extent it concerns the lack of an instruction directing the jury that
28   they had to unanimously find at least one statutory aggravating circumstance.

1  unanimously, the Court finds that there is no claim in Snow's original petition based on
2  the same core of operative facts as that claim.  Therefore, Claim 10M does not relate
3  back to Snow's original petition and is barred by the statute of limitations to the extent it
4  involves the lack of a jury instruction regarding the requirement that aggravating
5  circumstances be found unanimously by the jury; the remainder of Claim 10M relates
6  back, and is not barred by the statute of limitations.

7       In Claim 10N, Snow claims that his trial counsel was ineffective "for failing to
8  investigate and raise Claims Three through Nine, Twelve through Fifteen, Nineteen and
9  Twenty."  Second Amended Petition, p. 130. The Court will address Claim 10N as it
10  relates to trial counsel's ineffectiveness for investigating and raising each of the
11  referenced claims.  With respect to the claim that trial counsel was ineffective for failure
12  to raise Claim 3, the Court finds that claim is based on the same core of operative facts
13  as Grounds 8 and 24 of Snow's original petition (see Petition for Writ of Habeas Corpus
14  (dkt. no. 10), Grounds 8, 24), and that claim, therefore, relates back to Snow's original
15  petition and is not barred by the statute of limitations.  With respect to the claim that trial
16  counsel was ineffective for failure to raise Claim 4, the Court finds that claim is based on
17  the same core of operative facts as Ground 19 of Snow's original petition (see Petition
18  for Writ of Habeas Corpus (dkt. no. 10), Ground 19) and that claim, therefore, relates
19  back to Snow's original petition and is not barred by the statute of limitations.  With
20  respect to the claim that trial counsel was ineffective for failure to raise Claim 5, the
21  Court finds that there is no claim in Snow's original petition based on the same core of
22  operative facts as the claim, that Snow does not show that he is entitled to relief under
23  28 U.S.C. § 2244(d)(1)(D) with regard to the claim, and that, therefore, the claim is
24  barred by the statute of limitations. With respect to the claim that trial counsel was
25  ineffective for failure to raise Claim 6, the Court finds that there is no claim in Snow's
26  original petition based on the same core of operative facts as the claim, that Snow does
27  not show that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D) with regard to the
28  claim, and that, therefore, the claim is barred by the statute of limitations.  With respect

1   to the claim that trial counsel was ineffective for failure to raise Claim 7, the Court finds

2   that claim is based on the same core of operative facts as Ground 7 of Snow's original

3   petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 7) and that claim,

4   therefore, relates back to Snow's original petition and is not barred by the statute of

5   limitations.  With respect to the claim that trial counsel was ineffective for failure to raise

6   Claim 8, the Court finds that claim is based on the same core of operative facts as

7   Ground 21 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no.

8   10), Ground 21) and that claim, therefore, relates back to Snow's original petition and is

9   not barred by the statute of limitations.  With respect to the claim that trial counsel was

10  ineffective for failure to raise Claim 9, the Court finds that claim is based on the same

11  core of operative facts as Ground 1 of Snow's original petition (*see* Petition for Writ of

12  Habeas Corpus (dkt. no. 10), Ground 1) and that claim, therefore, relates back to

13  Snow's original petition and is not barred by the statute of limitations.  With respect to

14  the claim that trial counsel was ineffective for failure to raise Claim 12A, the Court finds

15  that there is no claim in Snow's original petition based on the same core of operative

16  facts as the claim, and that, therefore, the claim does not relate back to Snow's original

17  petition and is barred by the statute of limitations.  With respect to the claim that trial

18  counsel was ineffective for failure to raise Claim 12B, the Court finds that claim is based

19  on the same core of operative facts as Ground 13 of Snow's original petition

20  (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 13) and that claim,

21  therefore, relates back to Snow's original petition and is not barred by the statute of

22  limitations.  With respect to the claim that trial counsel was ineffective for failure to raise

23  Claim 13A, the Court finds that claim is based on the same core of operative facts as

24  Ground 18 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no.

25  10), Ground 18) and that claim, therefore, relates back to Snow's original petition and is

26  not barred by the statute of limitations.  With respect to the claim that trial counsel was

27  ineffective for failure to raise Claim 13B, the Court finds that there is no claim in Snow's

28  original petition based on the same core of operative facts as the claim, and that,

1   therefore, the claim does not relate back to Snow's original petition and is barred by the

2   statute of limitations. With respect to the claim that trial counsel was ineffective for

3   failure to raise Claim 13C, the Court finds that there is no claim in Snow's original

4   petition based on the same core of operative facts as the claim, and that, therefore, the

5   claim does not relate back to Snow's original petition and is barred by the statute of

6   limitations.  With respect to the claim that trial counsel was ineffective for failure to raise

7   Claim 14, the Court finds that claim is based on the same core of operative facts as

8   Ground 12 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no.

9   10), Ground 12) and that claim, therefore, relates back to Snow's original petition and is

10   not barred by the statute of limitations.  With respect to the claim that trial counsel was

11   ineffective for failure to raise Claim 15, the Court finds that claim is based on the same

12   core of operative facts as Ground 26 of Snow's original petition (*see* Petition for Writ of

13   Habeas Corpus (dkt. no. 10), Ground 26) and that claim, therefore, relates back to

14   Snow's original petition and is not barred by the statute of limitations.  With respect to

15   the claim that trial counsel was ineffective for failure to raise Claim 19, the Court finds

16   that there is no claim in Snow's original petition based on the same core of operative

17   facts as the claim, and that, therefore, the claim does not relate back to Snow's original

18   petition and is barred by the statute of limitations. With respect to the claim that trial

19   counsel was ineffective for failure to raise Claim 20, the Court finds that there is no

20   claim in Snow's original petition based on the same core of operative facts as the claim,

21   that Snow does not show that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D)

22   with regard to the claim, and that, therefore, the claim is barred by the statute of

23   limitations.

24          **11.    Claim 11**

25          In Claim 11, Snow claims that his constitutional rights were violated "because of

26   the trial court's failure to properly instruct the jury concerning the weight to be given

27   accomplice testimony."  Second Amended Petition, p. 131. The Court finds that Claim

28   11 is based on the same core of operative facts as Ground 10 of Snow's original

1    petition.   *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 10.   Claim 11,

2    therefore, relates back to Snow's original petition and is not barred by the statute of

3    limitations.

4                    **12.    Claim 12**

5           In Claim 12, Snow claims that his constitutional rights were violated "because of

6    the trial court's failure to properly instruct the jury concerning the elements of the capital

7    offense." Second Amended Petition, p. 133. Claim 12 has two subparts. *See id.* at 133-

8    36.

9           In Claim 12A, Snow claims that his constitutional rights were violated by a jury

10   instruction given by the court regarding premeditation and deliberation. Second

11   Amended Petition, pp. 133-35. There is no claim in Snow's original petition based on

12   the same core of operative facts as Claim 12A.  *See* Petition for Writ of Habeas Corpus

13   (dkt. no. 10). Therefore this claim does not relate back to Snow's original petition.  Snow

14   does not assert any other basis upon which Claim 12A might be considered timely.

15   Claim 12A, therefore, is barred by the statute of limitations.

16          In Claim 12B, Snow claims that his constitutional rights were violated by a jury

17   instruction given by the court regarding express and implied malice aforethought.

18   Second Amended Petition, pp. 135-36.  The Court finds that Claim 12B is based on the

19   same core of operative facts as Ground 13 of Snow's original petition.  *See* Petition for

20   Writ of Habeas Corpus (dkt. no. 10), Ground 13.  Claim 12B, therefore, relates back to

21   Snow's original petition and is not barred by the statute of limitations.

22                   **13.    Claim 13**

23          In Claim 13, Snow claims that his constitutional rights were violated "because of

24   the trial Court's failure to properly instruct the jury during the sentencing hearing."

25   Second Amended Petition, p. 137.  Claim 13 has three subparts. *See id.* at 137-40.

26          In Claim 13A, Snow claims that his constitutional rights were violated by a jury

27   instruction stating that a verdict may not be influenced by sympathy. Second Amended

28   Petition, pp. 137-38.  The Court finds that Claim 13A is based on the same core of

1   operative facts as Ground 18 of Snow's original petition. *See* Petition for Writ of Habeas

2   Corpus (dkt. no. 10), Ground 18.  Claim 13A, therefore, relates back to Snow's original

3   petition and is not barred by the statute of limitations.

4          In Claim 13B, Snow claims that his constitutional rights were violated because

5   "his jury was never instructed that it must unanimously find the existence of one

6   aggravating circumstance. . . ." Second Amended Petition, p. 138 (emphasis removed).

7   There is no claim in Snow's original petition based on the same core of operative facts

8   as Claim 13B.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10).  Therefore this

9   claim does not relate back to Snow's original petition.  Snow does not assert any other

10  basis upon which Claim 13B might be considered timely.  Claim 13B is barred by the

11  statute of limitations.

12         In Claim 13C, Snow claims that his constitutional rights were violated because

13  "[t]he jury was never instructed that it had to find the second element of death eligibility,

14  that the aggravating circumstances were not outweighed by the mitigation, beyond a

15  reasonable doubt." Second Amended Petition, p. 139. There is no claim in Snow's

16  original petition based on the same core of operative facts as Claim 13C. *See* Petition

17  for Writ of Habeas Corpus (dkt. no. 10).  Therefore this claim does not relate back to

18  Snow's original petition.  Snow does not assert any other basis upon which Claim 13C

19  might be considered timely.  Claim 13C is barred by the statute of limitations.

20                        **14.   Claim 14**

21         In Claim 14, Snow claims that his constitutional rights were violated "due to the

22  jury's finding of death eligibility based upon the burglary aggravating circumstance,

23  which was predicated solely upon an intent to commit murder when entering a building."

24  Second Amended Petition, p. 141. The Court finds that Claim 14 is based on the same

25  core of operative facts as Ground 12 of Snow's original petition.  *See* Petition for Writ of

26  Habeas Corpus (dkt. no. 10), Ground 12.  Claim 14, therefore, relates back to Snow's

27  original petition and is not barred by the statute of limitations.

28  ///

### 15.   Claim 15

In Claim 15, Snow claims that his constitutional rights were violated "because the reasonable doubt instruction given during both the trial and sentencing phase[s] improperly minimized the state's burden of proof." Second Amended Petition, p. 144. The Court finds that Claim 15 is based on the same core of operative facts as Ground 26 of Snow's original petition. *See* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 26. Claim 15, therefore, relates back to Snow's original petition and is not barred by the statute of limitations.

### 16.   Claim 16

In Claim 16, Snow claims that his constitutional rights were violated "because Mr. Snow was not afforded effective assistance of counsel on appeal." *Id.* at 146. Claim 16 includes several subparts. *See id.* Specifically, in Claim 16, Snow claims that his constitutional rights were violated by the failure of his appellate counsel to raise, on appeal, in whole or in part, Claims 3, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 19, and 20.

With respect to the claim that appellate counsel was ineffective for failure to raise Claim 3, the Court finds that claim is based on the same core of operative facts as Grounds 8 and 24 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Grounds 8, 24) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 5, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, and that Snow does not show that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D) with regard to the claim; therefore, the claim is barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 6, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, that Snow does not show that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D) with regard to the claim, and that, therefore, the claim is barred by the statute of limitations. With respect to the claim that

appellate counsel was ineffective for failure to raise Claim 7, the Court finds that claim is based on the same core of operative facts as Ground 7 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 7) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 8, the Court finds that claim is based on the same core of operative facts as Ground 21 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 21) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 9, the Court finds that claim is based on the same core of operative facts as Ground 1 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 1) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 11, the Court finds that claim is based on the same core of operative facts as Ground 10 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 10) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 12A, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, and that, therefore, the claim is barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 12B, the Court finds that claim is based on the same core of operative facts as Ground 13 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 13) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 13A, the Court finds that claim is based on the same core of operative facts as Ground 18 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt.

no. 10), Ground 18) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 13B, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, and that, therefore, the claim is barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 13C, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, and that, therefore, the claim is barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 14, the Court finds that claim is based on the same core of operative facts as Ground 12 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 12) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 15, the Court finds that claim is based on the same core of operative facts as Ground 26 of Snow's original petition (*see* Petition for Writ of Habeas Corpus (dkt. no. 10), Ground 26) and that claim, therefore, relates back to Snow's original petition and is not barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 19, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, and that, therefore, the claim is barred by the statute of limitations. With respect to the claim that appellate counsel was ineffective for failure to raise Claim 20, the Court finds that there is no claim in Snow's original petition based on the same core of operative facts as the claim, that Snow does not show that he is entitled to relief under 28 U.S.C. § 2244(d)(1)(D) with regard to the claim, and that, therefore, the claim is barred by the statute of limitations.

### 17.   Claim 17

In Claim 17, Snow claims that his constitutional rights were violated "because the state courts unfairly limited the issues to be raised in post-conviction proceedings and

the ability of counsel to litigate those issues." Second Amended Petition, p. 148. There is no claim in Snow's original petition based on the same core of operative facts as Claim 17. *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore, this claim does not relate back to Snow's original petition. Snow does not assert any other basis upon which Claim 17 might be considered timely. Claim 17 is barred by the statute of limitations.

### 18. Claim 18

In Claim 18, Snow claims that his constitutional rights were violated "by the ineffective assistance of state post-conviction counsel." Second Amended Petition, p. 155. There is no claim in Snow's original petition based on the same core of operative facts as Claim 18. *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore, this claim does not relate back to Snow's original petition. Snow does not assert any other basis upon which Claim 18 might be considered timely. Claim 18 is barred by the statute of limitations.

### 19. Claim 19

In Claim 19, Snow claims that his constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of [Mr. Snow's] right to the effective assistance of counsel." Second Amended Petition, p. 160. This is a cumulative error claim. The Court finds that it is timely to the same extent that the claims it incorporates are timely. Therefore, it is not barred by the statute of limitations.

### 20. Claim 20

In Claim 20, Snow claims that his "death sentence is invalid under the state and federal constitutional guarantees of due process, equal protection, and a reliable sentence because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments." Second Amended Petition, p. 162.

///

///

1   There is no claim in Snow's original petition based on the same core of operative

2   facts as Claim 20.  *See* Petition for Writ of Habeas Corpus (dkt. no. 10).  Therefore this

3   claim does not relate back to Snow's original petition.

4   Snow claims that, with respect to Claim 20, he is entitled to relief under 28 U.S.C.

5   § 2244(d)(1)(D), because "a copy of the [Nevada Department of Corrections'

6   confidential execution manual] was obtained for the first time by the FPD in April 2006."

7   Opposition to Motion to Dismiss, p. 27.  That, however, was still well over a year before

8   this claim first appeared in a petition in this case – in Snow's first amended petition, filed

9   November 26, 2007 (dkt. no. 115).  Moreover, the Court rejects Snow's claim that he is

10   entitled to relief under 28 U.S.C. § 2244(d)(1)(D) because news media first published

11   stories in 2011 and 2012 stating that the execution chamber at the Nevada State Prison

12   is unfit for carrying out executions; Snow does not show that the discovery of that

13   information was necessary to establish a factual basis for this claim.

14   Claim 20 is barred by the statute of limitations.

15   ### 21.   Claim 21

16   In Claim 21, Snow claims that his constitutional rights were violated "because Mr.

17   Snow's capital trial, sentencing, and review on direct appeal were conducted before

18   state judicial officers whose tenure in office was not during good behavior but whose

19   tenure was dependent on popular election."  Second Amended Petition, p. 174.  There

20   is no claim in Snow's original petition based on the same core of operative facts as

21   Claim 21. *See* Petition for Writ of Habeas Corpus (dkt. no. 10). Therefore, this claim

22   does not relate back to Snow's original petition. Snow does not assert any other basis

23   upon which Claim 21 might be considered timely.  Claim 21 is barred by the statute of

24   limitations.

25

26   ### F.   Snow's Request for an Evidentiary Hearing on Statute of Limitations Issues

27   In his motion for evidentiary hearing (dkt. no. 159), and the reply he filed in

28   support of that motion (dkt. no. 171), Snow requests an evidentiary hearing with respect

1  to certain factual matters related to the statute of limitations issues raised by the motion
2  to dismiss.

3        Snow requests an evidentiary hearing concerning his argument that the March
4  20, 1997, "closure order" in Case Number CV-S-94-0278-PMP-LRL, constitutes a stay
5  rather than a dismissal of the 1994 federal habeas proceeding, and that this current
6  federal habeas action is in reality the same action as Case Number CV-S-94-0278-
7  PMP-LRL. *See* Reply to Opposition to Motion for Evidentiary Hearing (dkt. no. 171), pp.
8  2-14. Snow also requests an evidentiary hearing with respect to his argument that he is
9  entitled to equitable tolling of the AEDPA limitations period from March 20, 1997, when
10  his 1994 federal habeas action was dismissed, to March 13, 2003, when this, his third,
11  federal habeas action was initiated. *See id*. As is discussed above, the Court finds,
12  based on the record, that while the dismissal order in Case Number CV-S-94-0278-
13  PMP-LRL clearly provides for dismissal of the action, Snow is nevertheless entitled to
14  equitable tolling. Therefore, there is no need for an evidentiary hearing on either of
15  these issues.

16        Snow requests an evidentiary hearing "to prove that he meets the statutory
17  requirements under 28 U.S.C. § 2244(d)(1)(B, D), based upon his diligence in
18  uncovering the factual bases of the information contained in Claims One and Two of his
19  second amended petition." Motion for Evidentiary Hearing (dkt. no. 159), p. 4. As is
20  discussed above, with respect to Claims 1A, 1B, 1C, 1D, and 1E, the Court rules that
21  those claims are not barred by the statute of limitations. With respect to Ground 2, it is
22  plain from the record – and admitted by Snow – that he obtained the information forming
23  the factual basis for the claim by 2004, three (3) years before he first asserted the claim
24  in his habeas petition. Based on Snow's admissions in that regard with respect to Claim
25  2, and based on the record, the Court rejects Snow's argument under 28 U.S.C. §
26  2244(d)(1)(B) and (D). There is no factual dispute, and no need for an evidentiary
27  hearing, with respect to that issue.

28  ///

1    Snow requests an evidentiary hearing with regard to Claims 5, 6, 10(F, I, and N),

2    and 20, concerning the question of when he was able to discover the factual bases for

3    those claims. *See* Motion for Evidentiary Hearing, pp. 4-5. However, in addressing

4    these issues the Court looks to Snow's own concessions regarding when he discovered

5    the factual bases of these claims. There is no factual dispute, and no need for an

6    evidentiary hearing with respect to these issues.

7    **IV.    PROCEDURAL DEFAULT**

8         **A.    Legal Standards**

9         In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails

10   to comply with the state's procedural requirements in presenting his claims is barred

11   from obtaining a writ of habeas corpus in federal court by the adequate and

12   independent state ground doctrine. *Coleman v. Thompson*, 501 U.S. 722, 731–32

13   (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies,

14   a habeas petitioner who has failed to meet the State's procedural requirements for

15   presenting his federal claims has deprived the state courts of an opportunity to address

16   those claims in the first instance.").  Where such a procedural default constitutes an

17   adequate and independent state ground for denial of habeas corpus, the default may be

18   excused only if "a constitutional violation has probably resulted in the conviction of one

19   who is actually innocent," or if the prisoner demonstrates cause for the default and

20   prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

21        To demonstrate cause for a procedural default, the petitioner must "show that

22   some objective factor external to the defense impeded" his efforts to comply with the

23   state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external

24   impediment must have prevented the petitioner from raising the claim. *See McCleskey*

25   *v. Zant*, 499 U.S. 467, 497 (1991).  With respect to the prejudice prong, the petitioner

26   bears "the burden of showing not merely that the errors [complained of] constituted a

27   possibility of prejudice, but that they worked to his actual and substantial disadvantage,

28   infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*,

1   874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170

2   (1982).

3         In their motion to dismiss, respondents assert that Claims 1, 2, 3, 4, 5, 6, 7, 8, 9,

4   10A, 10B, 10C, 10E, 10F, 10G, 10H, 10I, 10J, 10K (in part), 10L, 10M, 10N (in part), 11,

5   12, 13, 15, 16 (in part), 17, 18, 19, 20, and 21, of Snow's second amended petition, are

6   procedurally defaulted and should be dismissed on that ground.

7         **B.      The Procedural Default**

8         In his fourth state habeas petition, filed April 25, 2008, Snow presented all of the

9   claims that are set forth in his second amended petition in this federal action.

10  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibits 20a

11  and 20b.  That petition was dismissed on procedural grounds by the state district court.

12  *See* Findings of Fact, Conclusions of Law and Order, Respondents' Exhibit 22. In its

13  order, ruling on the appeal from the dismissal of Snow's fourth state habeas petition, the

14  Nevada Supreme Court stated:

15         Because he filed his petition approximately 23 years after this court
           resolved his direct appeal, the petition was untimely under NRS 34.726(1).
16         The petition was also successive and therefore procedurally barred
           pursuant to NRS 34.810(1)(b)(2). And, as it appears that the State
17         specifically pleaded laches, the petition was subject to dismissal under
           NRS 34.800.
18

19  Order of Affirmance, Respondents' Exhibit 24, p. 2. The Nevada Supreme Court went

20  on to rule that Snow did not show cause and prejudice regarding his default, to reject

21  Snow's argument that he should be excused from the state procedural default rules

22  because the court had arbitrarily and inconsistently applied them, and to reject Snow's

23  argument that he is actually innocent of the death penalty.  *Id*. at 3-8.

24        **C.      Adequacy of the State Procedural Rules**

25        A state procedural rule is "adequate" if it is "clear, consistently applied, and well-

26  established at the time of the petitioner's purported default." *Calderon v. United States*

27  *Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation

28  marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (State procedural

1    rule adequate if "firmly established and regularly followed by the time as of which it is to

2    be applied." (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241

3    F.3d 1201, 1203 (9th Cir.2001).

4          In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals

5    announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State

6    carries the initial burden of pleading "the existence of an independent and adequate

7    state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to

8    the petitioner "to place that defense in issue," which the petitioner may do "by asserting

9    specific factual allegations that demonstrate the inadequacy of the state procedure,

10   including citation to authority demonstrating inconsistent application of the rule." *Id*. If

11   the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the

12   procedural rule rests with the State, which must demonstrate "that the state procedural

13   rule has been regularly and consistently applied in habeas actions." *Id*.; *see also King v.

14   Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

15         In this case, the respondents meet their initial burden under *Bennett* by asserting

16   that the Nevada Supreme Court's application of NRS 34.726, the state statute of

17   limitations for habeas actions, constituted an independent and adequate state

18   procedural ground for denying relief. *See* Motion to Dismiss, p. 67.

19         In asserting their procedural default argument, the respondents do not appear to

20   rely on the Nevada Supreme Court's application of NRS 34.800 or 34.810. *See id*. With

21   respect to NRS 34.810 (successive petitions), this is presumably because the Ninth

22   Circuit Court of Appeals has held that statute to be inadequate to support the procedural

23   default defense in federal court. *See Valerio v. Crawford*, 306 F.3d 742, 777-78 (9th Cir.

24   2002). At any rate, respondents meet their burden with respect to their assertion that

25   the Supreme Court's application of NRS 34.726 constituted an independent and

26   adequate bar to federal habeas review of certain of Snow's claims, and the analysis

27   proceeds with respect to the court's application of that statute.

28   ///

1    In response, Snow does not generally challenge the adequacy of NRS 34.726.[3]

2    The Court notes that the Ninth Circuit Court of Appeals has rejected the

3    argument that the Nevada Supreme Court has inconsistently applied NRS 34.726, and

4    has held it to be adequate to support a procedural bar. *See Loveland v. Hatcher*, 231

5    F.3d 640, 642-63 (9th Cir. 2000) (regarding NRS 34.726, as of 1993); *Moran v.*

6    *McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (regarding NRS 34.726, as of 1996).

7    This Court is not aware of any ruling by the Ninth Circuit Court of Appeals finding NRS

8    34.726 to be inadequate to support a state procedural bar.

9    This Court, then, rules NRS 34.726 to be adequate to support the procedural

10   default defense asserted by respondents.

11   **D.    Independence**

12   A state procedural bar is independent unless it appears "to rest primarily on

13   federal law or appears to be interwoven with federal law." *Coleman*, 501 U.S. at 734;

14   *see also Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).   Also, if the state

15   court's decision fails "to specify which claims were barred for which reasons," the

16   ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v.*

17   *Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050

18   (9th Cir. 2003).

19   In response to the motion to dismiss, Snow does not make any argument that the

20   procedural default rulings invoked by the state are generally not independent of federal

21   law, in a manner applicable to all his defaulted claims. *See* Opposition to Motion to

22   Dismiss.[4]

23   ///

24

25   [3]Snow does make an argument regarding the adequacy of NRS 34.726 that applies only to Claim 12A.  That argument is addressed below, in the discussion of that particular claim.

26

27   [4]With respect to Claims 1 and 2, Snow does claim that, because of the nature of those claims, the Nevada Supreme Court's application of the state procedural rules was not independent. The Court addresses that argument below, in the context of its

28   consideration of the asserted procedural default of Claims 1 and 2.

**E.  Limitations Imposed by the State District Court in the First State Habeas Proceeding**

In his opposition to the motion to dismiss, Snow makes an argument − apparently intended to apply to all the claims alleged by respondents to be procedurally defaulted − that there was cause for the default, as well as prejudice, because of limitations imposed by the state district court on the litigation of his first state habeas action. *See* Opposition to Motion to Dismiss, pp. 91-96. Snow argues that "the district court's denial of discovery, of appointment of local counsel, of funds for an investigator, and of expansion of the record was an objective factor external to the defense that prevented Mr. Snow from raising the claims contained in the instant petition sooner." *Id.* at 91.

Snow's argument in this regard is without merit. The procedural default at issue is the Nevada Supreme Court's application of the state statute of limitations, NRS 34.726, to Snow's fourth state habeas action. *See* Order of Affirmance, Respondents' Exhibit 24. Even assuming Snow was hindered, as he claims, by the state district court in the litigation of his first state habeas action, this says nothing of the delay of more than twenty (20) years, between the conclusion of Snow's first state habeas action, on August 27, 1987, and the initiation of his fourth state habeas action, on April 25, 2008. *See* Order of Affirmance, Respondents' Exhibit 24, p. 2 ("Because he filed his petition approximately 23 years after this court resolved his direct appeal, the petition was untimely under NRS 34.726(1)."). The state district court's handling of Snow's first state habeas action cannot be considered cause for the procedural default at issue here.

**F.  Claims of Ineffective Assistance of Trial Counsel**

With respect to the procedural default of his claims of ineffective assistance of trial counsel, in Claims 10A through 10N, 12, 13, and 15 (*see* descriptions of each of these claims, *supra*), Snow argues, relying upon *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that ineffective assistance of counsel in his first state habeas action constitutes cause for the procedural default. *See* Opposition to Motion to Dismiss, pp. 58-88.

///

1    In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman v.*

2    *Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a

3    postconviction proceeding does not establish cause" to excuse procedural default.

4    *Martinez*, 132 S.Ct. at 1319. The court in *Martinez* then "qualif[ied] *Coleman* by

5    recognizing a narrow exception: inadequate assistance of counsel at initial-review

6    collateral proceedings may establish cause for a prisoner's procedural default of a claim

7    of ineffective assistance at trial." *Id.* at 1315. The court described "initial-review

8    collateral proceedings" as "collateral proceedings which provide the first occasion to

9    raise a claim of ineffective assistance at trial." *Id.*

10    The Court finds Snow's argument in this regard to be fundamentally flawed.  In

11    *Martinez*, the petitioner's procedural default was based on an Arizona rule barring

12    successive petitions; as such, the petitioner's procedural default was complete when

13    counsel in the initial-review collateral proceeding failed to raise certain claims.

14    *See Martinez*, 132 S.Ct. at 1314. The procedural default at issue in this case is different.

15    Snow's procedural default is based on the statute of limitations in NRS § 34.726.  The

16    procedural default occurred because Snow delayed for some twenty-three (23) years,

17    after his direct appeal ended in August 1985, before he initiated his fourth state habeas

18    action in April 2008, asserting the claims now held to be procedurally defaulted.

19    *See* Order of Affirmance, Respondents' Exhibit 24, p. 2.  The attorney who represented

20    Snow in his first state habeas action represented Snow for only about a year and a half,

21    while Snow's first state habeas action was pending − a very small portion of the time

22    over which the statute of limitations default occurred.  Ineffective assistance of Snow's

23    first state post-conviction counsel cannot explain the long delay that led to Snow's

24    default under NRS § 34.726. In short, there is an insufficient causal connection between

25    the alleged ineffective assistance of Snow's first post-conviction counsel and the

26    procedural default at issue in this case.  Ineffective assistance of counsel in Snow's first

27    state habeas action does not function as cause for the procedural default of the claims

28    of ineffective assistance of trial counsel in Claims 10A through 10N, 12, 13, and 15.

### G.    The Nevada Supreme Court's Mandatory Review of Claims on Snow's Direct Appeal

Snow argues that Claims 3, 8, 11, 12, 13, and 15, were exhausted on direct appeal by virtue of the Nevada Supreme Court's mandatory review of death sentences under NRS 177.055, and, therefore, those claims are not procedurally defaulted. Opposition to Motion to Dismiss, pp. 46-49, 96-103.

At the time of Snow's direct appeal, under NRS 177.055, the Nevada Supreme Court was to independently examine the record to determine (1) whether the evidence supported the finding of the aggravating circumstances, (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (3) whether the death sentence was excessive or disproportionate to the penalty imposed in similar cases. *See id.* at 96; *see also* Petitioner's Exhibit 226.

In order to find claims exhausted by virtue of the Nevada Supreme Court's review under NRS 177.055, this Court must be satisfied that such review encompassed the specific factual and federal law grounds advanced by the petitioner in his federal petition. *See Comer v. Schriro*, 463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme Court's statutory automatic review).  In finding implied exhaustion in *Comer*, the court of appeals noted that only claims that are "clearly encompassed within Arizona's independent review" and "readily apparent from the record" will be deemed impliedly exhausted. *Id.* at 956.

In Claim 3, Snow claims that his constitutional rights were violated "because his death sentence is disproportionate to that of his co-defendants, being the product of racial discrimination by state officials." Second Amended Petition, p. 45. Claim 3 raises an issue that is within the scope of the state supreme court's mandatory review: proportionality of the petitioner's death sentence.  Moreover, we know that the Nevada Supreme Court reviewed that claim under its mandatory review, because, on the appeal in Snow's first state habeas action, that court stated that it had.  On the appeal in his first state habeas action, Snow argued that his appellate counsel had been ineffective

because he failed to raise the issue of sentence proportionality. Brief of Appellant, Respondents' Exhibit 6a, pp. 15-30.  In ruling on that claim, the Nevada Supreme Court stated, regarding its mandatory review on Snow's direct appeal:

> At that time, NRS 177.055(2) required this court to review whether the sentence was proportionate to penalties imposed in other cases.  We concluded that the sentence of death was not disproportionate and that it had not been imposed under passion, prejudice, or any arbitrary factor. *Snow*, 101 Nev. at 448-49.  The habeas court correctly held that we were aware of the sentences received by the co-defendants when we conducted our proportionality review.  Snow's sentence was not disproportionate to the other defendants.  Although the other conspirators were equally culpable, Snow was the hired trigger man, with a lengthy criminal and prison record.  None of the other defendants had similar criminal records.  We have upheld disparate death sentences in other cases. *See Neuschafer v. State*, 101 Nev. 331, 337, 705 P.2d 7609, 613 (1985) (death sentence not disproportionate to other defendants who received life with or without parole).

Order Dismissing Appeal, Respondents' Exhibit 7, pp. 2-3. Thus, the Nevada Supreme Court itself acknowledged that it ruled on Snow's proportionality claim, as part of its mandatory review of claims on Snow's direct appeal, and, in so doing, was aware of the sentences received by Snow's co-defendants. Therefore, Claim 3 is not barred from litigation in this federal habeas action by the procedural default doctrine.

The Court will next address Claims 8, 11, 12, 13 and 15.  In Claim 8, Snow claims that his constitutional rights were violated "due to improper arguments by the prosecution which distorted the fact finding process and rendered the trial fundamentally unfair." Second Amended Petition, p. 84. In Claim 11, Snow claims that his constitutional rights were violated "because of the trial court's failure to properly instruct the jury concerning the weight to be given accomplice testimony." *Id*. at 131. In Claim 12A, Snow claims that his constitutional rights were violated by a jury instruction given by the court regarding premeditation and deliberation.  *Id*. at 133-35.  In Claim 12B, Snow claims that his constitutional rights were violated by a jury instruction given by the court regarding express and implied malice aforethought.  *Id*. at 135-36.  In Claim 13A, Snow claims that his constitutional rights were violated by a jury instruction stating that a verdict may not be influenced by sympathy.  *Id*. at 137-38. In Claim 13B, Snow claims

that his constitutional rights were violated because "his jury was never instructed that it must unanimously find the existence of one aggravating circumstance. . . ." *Id*. at 138 (emphasis removed). In Claim 13C, Snow claims that his constitutional rights were violated because "[t]he jury was never instructed that it had to find the second element of death eligibility, that the aggravating circumstances were not outweighed by the mitigation, beyond a reasonable doubt." *Id*. at 139. And, in Claim 15, Snow claims that his constitutional rights were violated "because the reasonable doubt instruction given during both the trial and sentencing phase[s] improperly minimized the state's burden of proof." *Id*. at 144.

This Court finds that Claims 8, 11, 12, 13, and 15 were not necessarily encompassed within the mandatory review of the state supreme court. *See Beam v. Paskett*, 3 F.3d 1301, 1307 (9th Cir.1993), *overruled on other grounds*, *Lambright v. Stewart*, 191 F.3d 1181 (9th Cir.1999) (en banc) (holding that the Idaho Supreme Court's mandatory review "necessarily" included the claim under consideration). Snow cites cases in which the Nevada Supreme Court has referred to federal constitutional standards on its mandatory review (*see* Opposition to Motion to Dismiss, pp. 99-102), but neither NRS 177.055 nor Nevada case law obligates the Nevada Supreme Court to identify and rule upon federal constitutional issues. *See Sechrest v. Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996). Snow has not shown that any of Claims 8, 11, 12, 13, or 15 are "clearly encompassed" within the scope of NRS 177.055. To conclude otherwise would be to apply a fiction that cuts against the policy of federal-state comity that underlies the exhaustion and procedural default doctrines. None of Claims 8, 11, 12, 13, and 15 were exhausted on direct appeal by operation of the mandatory review statute. Claims 8, 12, 13, and 15 are procedurally defaulted.[5]

---

[5]As is discussed, *infra*, in the discussion of Claim 11, that claim is not procedurally defaulted, for a different reason: Snow raised Claim 11 in his second state habeas action, the claim was dismissed by the state district court, and, before Snow could file an opening brief on appeal, the Nevada Supreme Court affirmed, finding the claim barred as a successive petition, under NRS 34.810, which was inadequate to support the defense of procedural default. So, while Claim 11 was not exhausted on *(fn. cont...)*

1  **H.   Snow's Claim-Specific Arguments Regarding the Procedural Default**

2  **1.   Claims 1 and 2**

3  In Claim 1, Snow claims that his constitutional rights were violated "due to the

4  state's failure to disclose material exculpatory and impeachment information, to the

5  state's elicitation of false testimony from its witnesses, to the state's failure to correct the

6  false testimony of its witnesses, and to a persistent pattern of misconduct by the state

7  which distorted the fact-finding process and rendered Mr. Snow's trial fundamentally

8  unfair." Second Amended Petition, p. 11. Claim 1 includes several subparts. *See id*. at

9  11-41. In Claim 1A, Snow alleges that "the prosecution failed to disclose material

10  impeachment information and failed to correct false testimony regarding undisclosed

11  benefits received by state's witness Richard Morelli." *Id*. at 14. In Claim 1B, Snow

12  alleges that "the state failed to disclose material exculpatory and impeachment

13  information pertaining to Kathy Faltinowski, the only testifying co-conspirator who

14  purportedly could identify Mr. Snow as the hit man who killed Harry Wham." *Id*. at 22. In

15  Claim 1C, Snow alleges that "the state failed to disclose material exculpatory and

16  impeachment evidence relating to Arlen and Jody Edwards." *Id*. at 26. In Claim 1D,

17  Snow alleges that "the state failed to disclose material exculpatory and impeachment

18  information relating to Melinda Barwick." *Id*. at 29. In Claim 1E, Snow alleges that "the

19  state failed to disclose material exculpatory and impeachment evidence from

20  information generated by law enforcement that could have been used to show that the

21  police failed to adequately investigate alternative suspects in the offense." *Id*. at 30.

22  Snow also includes sections F and G under Claim 1, although the material in those

23  subsections does not appear to set forth separate subclaims, but rather, appears to

24  include argument relative to Claims 1A, 1B, 1C, 1D, and 1E. In Claim 2, Snow claims

25  that his constitutional rights were violated "due to the state's actions in sending Richard

26

27  (*...fn. cont.*)
direct appeal, by virtue of the Nevada Supreme Court's mandatory review, it is not

28  procedurally defaulted.

1  Morelli, an agent of the government, into the jail to obtain incriminating statements from

2  Mr. Snow in violation of his right to counsel." *Id.* at 42.

3  These appeared in a state habeas petition for the first time in Snow's fourth state

4  habeas petition, initiated April 25, 2008.  Snow points to no previous presentation of any

5  of those claims in state court.

6  Snow argues that the Nevada Supreme Court's ruling, with respect to these

7  claims, was not independent of federal law, in that the procedural ruling was intertwined

8  with the merits of the claim. *See* Opposition to Motion to Dismiss, pp. 39-42.   The

9  following is the Nevada Supreme Court's ruling on the question of cause and prejudice

10  for the procedural bar:

11  
12  Snow argues that the district court erred by dismissing his post-conviction petition as procedurally barred because he established good cause and prejudice by showing that the State withheld material evidence in violation of *Brady*, 373 U.S. 83. *Brady* obliges a prosecutor to reveal evidence favorable to the defense when that evidence is material to guilt, punishment, or impeachment. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). There are three components to a successful *Brady* claim:  "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Id.* at 67, 993 P.2d at 37. We have acknowledged that "a *Brady* violation does not result if the defendant, exercising reasonable diligence, could have obtained the information."  *Rippo v. State*, 113 Nev. 1239, 1257, 946 P.2d 1017, 1028 (1997).

19  
20  When a *Brady* claim is raised in the context of a procedurally barred post-conviction petition, the petitioner has the burden of demonstrating good cause for his failure to present the claim earlier and actual prejudice. *State v. Bennett*, 119 Nev 589, 599, 81 P.3d 1, 8 (2003); *Mazzan*, 116 Nev. at 67, 993 P.2d at 37. As a general rule, "[g]ood cause and prejudice parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice." *Bennett*, 119 Nev. at 599, 81 P.3d at 8. But a *Brady* claim still must be raised within a reasonable time after discovery of the withheld evidence. *See Hathaway v. State*, 119 Nev. 248, 254-55, 71 P.3d 503, 507-08 (2003); *see also Harris v. Warden*, 114 Nev 956, 959 & 959-60 n.4, 964 P.2d 785, 788 & 788-89 n.4 (1998).

26  
27  Snow points to five categories of evidence that he alleges were withheld by the State and argues that the State's withholding the evidence precluded him from raising the *Brady* claim earlier and resulted in prejudice:  (1) evidence related to Richard Morelli, (2) evidence related to Kathy Faltinowski, (3) evidence related to Jody and Arlen Edwards, (4) evidence related to Malinda Barwick, and (5) evidence related to other

1   suspects. And although Snow obtained much of the alleged *Brady*
2   material several years before he filed the instant petition, he argues that
    the State's ongoing failure to comply with post-conviction discovery
3   procedures delayed the filing of his petition, as it took several years and
    federal court intervention to secure the challenged material from the State.

4   Having carefully reviewed each of Snow's *Brady* claims, *we*
5   *conclude that he failed to demonstrate good cause for his delay in raising*
    *those claims*, as the evidence was discovered or disclosed years before
6   Snow filed the instant petition or could have been discovered through
    reasonable diligence, was privileged, or its relevance was unclear.
7   [Footnote omitted.] However, even if he had demonstrated good cause,
    we conclude that he failed to show that any of the challenged evidence
8   was material such that it affected the outcome of his trial. Therefore, we
9   conclude that the district court did not err by summarily dismissing Snow's
    *Brady* claims.

10   Order of Affirmance, Respondents' Exhibit 24, pp. 3-5 (emphasis added). Thus, the

11   Nevada Supreme Court, while acknowledging that the cause-and-prejudice analysis

12   overlapped the merits of the *Brady* claims, ruled, in the quoted passage, on Snow's

13   argument that he could show cause-and-prejudice to overcome the procedural bar. In

14   making its ruling, the Nevada Supreme Court used the term "materiality," and

15   considered whether the allegedly withheld evidence was material, but the court plainly

16   did so only in judging whether Snow had made a showing of prejudice.

17   When a state court determines that a state procedural bar applies, and looks at

18   the merits of the federal constitutional claim for the purpose of determining whether the

19   petitioner can show cause and prejudice to overcome the procedural bar, the state

20   court's application of the bar is not considered to be intertwined with the merits of the

21   federal claim such as to deprive the state procedural bar of its independence. *See*

22   *Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir.1996). The Nevada Supreme Court's

23   application of NRS 34.726 was independent of federal law.

24   Also with regard to these claims, Snow asserts that he can show cause and

25   prejudice for the procedural default. *See* Opposition to Motion to Dismiss, pp. 42-46. In

26   his somewhat convoluted discussion in this regard, Snow argues the strength of his

27   *Brady* claims with respect to the Morelli, Faltinowski, and Edwards material, but Snow

28   does not explain how he was prevented from bringing those *Brady* claims in state court

44

1    within the state limitations period. As the Nevada Supreme Court ruled, the subject

2    material was discovered years before Snow initiated his fourth state habeas action.

3    Snow does not show cause and prejudice for the procedural default of Claims 1 and 2.

4        Claims 1A, 1B, 1C, 1D, 1E, and 2 are barred from litigation in this federal habeas

5    action by the procedural default doctrine.

6                    **2.     Claim 4**

7        In Claim 4, Snow claims that his constitutional rights were violated "due to the

8    seating of jurors on Mr. Snow's jury who were not impartial." Second Amended Petition,

9    p. 62. This claim concerns jurors Lorraine Van Compernolle and Dorothy Hansen. *Id.*

10   at 62-69.

11       The Court finds that Claim 4 is not procedurally defaulted, because Snow raised

12   the claim before the Nevada Supreme Court on his direct appeal. *See* Appellant's

13   Opening Brief, Respondents' Exhibit 3, pp. 40-49; Appellant's Reply Brief, Petitioner's

14   Exhibit 210, pp. 21-26. In that briefing, Snow stated that his claim was made, in part,

15   under the United States Constitution. *See* Appellant's Opening Brief, Respondents'

16   Exhibit 3, p. 40 ("The Nevada and United States Constitutions both provide for the right

17   to a jury trial and the right to due process of law at said trial."); Appellant's Reply Brief,

18   Petitioner's Exhibit 210, p 26 ("[T]he Defendant was obviously denied . . . the protection

19   of the United States Constitution due process of law. . . .").

20       As Snow raised Claim 4 on his direct appeal, it is not barred from litigation in this

21   federal habeas action by the doctrine of procedural default.

22                    **3.     Claim 5 and the Related Part of Claim 16**

23       In Claim 5, Snow claims that his constitutional rights were violated "due to the

24   trial court's failure to remove juror Gordon Buchanan, who was actually and impliedly

25   biased against Mr. Snow, and who contaminated the jury with extraneous information."

26   Second Amended Petition, p. 70. In Claim 16, Snow claims that his constitutional rights

27   were violated "because Mr. Snow was not afforded effective assistance of counsel on

28   appeal." *Id.* at 146. Claim 16 has several subparts, including a claim that Snow's

constitutional rights were violated by the failure of his appellate counsel to raise Claim 5 on appeal. *Id*.

On the appeal in his first state habeas action, Snow did assert a claim that his appellate counsel was ineffective for failing to raise, on his direct appeal, the claim that is now Claim 5. *See* Brief of Appellant, Respondents' Exhibit 6a, pp. 50-57. Therefore, the part of Claim 16 concerning appellate counsel's failure to raise Claim 5 on appeal is not procedurally defaulted.

Snow argues that the ineffective assistance of his appellate counsel, in failing to raise Claim 5 on his direct appeal, was cause for his procedural default of Claim 5. However, the procedural bar at issue is the state-law statute of limitations applied by the Nevada Supreme Court to the claims asserted in Snow's fourth state habeas action in 2008. Snow's claim of ineffective assistance of counsel on his direct appeal only speaks to his counsel's failure to raise this claim on that appeal, which was completed on August 28, 1985. Snow's argument does not speak to his delay from 1985 to 2008, before he raised the claim in his fourth state habeas action. Nor does the claim of ineffective assistance of his counsel on the direct appeal explain the abandonment of this claim on appeal in his first state habeas action. *See* Petition for Writ of Habeas Corpus, Respondents' Exhibit 4, p. 15, item 42; Brief of Appellant, Respondents' Exhibit 6a. Snow does not make a colorable showing of cause for the procedural default of Claim 5. Claim 5 is barred from litigation in this federal habeas action by the procedural default doctrine.

### 4.     Claim 6

In Claim 6, Snow claims that his constitutional rights were violated "due to manipulation during the grand jury selection process which deprived Mr. Snow of his right to a fair cross-section of the community." Second Amended Petition, p. 78.

///

///

///

1   Regarding this claim, in his opposition to the motion to dismiss, Snow states:

2    Mr. Snow acknowledges that this claim was raised for the first time in state
3    court in 2008, but alleges that he can overcome the procedural default
    bars because the factual basis for this claim was not reasonably available
4    to counsel until 2004.

5 Opposition to Motion to Dismiss, p. 53 (*citing Murray v. Carrier*, 477 U.S. 478, 488

6 (1986)).

7   However, even accepting as true Snow's allegations regarding the facts

8 underlying this claim, Snow does not explain – and does not show cause for – the delay

9 from 2004 until 2008 in asserting this claim in state court.  Snow does not show cause

10 for the procedural default that arose from his failure to comply with the state statute of

11 limitations with regard to this claim.

12   The Court finds Claim 6 to be barred from litigation in this federal habeas action

13 by the procedural default doctrine.

14      **5.**  **Claim 8 and the Related Part of Claim 16**

15   In Claim 8, Snow claims that his constitutional rights were violated "due to

16 improper arguments by the prosecution which distorted the fact finding process and

17 rendered the trial fundamentally unfair." Second Amended Petition, p. 84.  In Claim 16,

18 Snow claims that his constitutional rights were violated "because Mr. Snow was not

19 afforded effective assistance of counsel on appeal." *Id*. at 146.  Claim 16 has several

20 subparts, including a claim that Snow's constitutional rights were violated by the failure

21 of his appellate counsel to raise Claim 8 on appeal. *Id*.

22   Snow argues that he raised Claim 8 on his direct appeal, and, therefore, it was

23 not procedurally defaulted. *See* Opposition to Motion to Dismiss, pp. 55-56.  Snow did,

24 on his direct appeal, complain about some of the arguments of the prosecution that are

25 now the subject of Claim 8, but on the direct appeal Snow did not claim that those

26 arguments by the prosecution deprived him of his federal constitutional rights.

27 *See* Appellant's Opening Brief, Respondents' Exhibit 3, pp. 19-35.  Snow's citation, in

28 his briefing on the direct appeal, of the cases of *Farmer v. State*, 95 Nev. 849, 603 P.2d

1   700 (1979), and *McGuire v. State*, 100 Nev. 153, 677 P.2d 1060 (1984), did not serve to

2   alert the Nevada Supreme Court that Snow meant to raise a federal constitutional issue.

3   Nor was the briefing by the state on the appeal such that the Nevada Supreme Court

4   would have understood there to be a federal constitutional issue. *See* Respondents'

5   Answering Brief, Petitioner's Exhibit 209, pp. 36-46. Moreover, the opinion of the

6   Nevada Supreme Court, on the direct appeal, gives no indication that the court

7   understood there to be a federal constitutional issue raised with respect to the

8   allegations of improper argument by the prosecution. *See Snow v. State*, 101 Nev. 439,

9   446-48, 705 P.2d 632, 638-39 (1985).

10         Snow also argues that ineffective assistance of his appellate counsel, in failing to

11   raise Claim 8 on his direct appeal, was cause for his procedural default of Claim 8. *See*

12   Opposition to Motion to Dismiss, pp. 56-57. However, Snow's claim of ineffective

13   assistance of counsel on his direct appeal only speaks to his counsel's failure to raise

14   this claim on that appeal, which was completed August 28, 1985; Snow's argument

15   does not explain his delay from 1985 to 2008, before he raised this claim, in federal

16   constitutional terms, in his fourth state habeas action. Snow has not shown cause for

17   the procedural default of Claim 8. Claim 8 is barred from litigation in this federal habeas

18   action by the procedural default doctrine.

19         On the appeal in his first state habeas action, Snow did assert a claim that his

20   appellate counsel was ineffective for failing to raise, on his direct appeal, claims

21   regarding certain alleged improper argument by the prosecution. *See* Brief of Appellant,

22   Respondents' Exhibit 6a, pp. 36-49. On that appeal, Snow complained of his appellate

23   counsel's failure to raise, on direct appeal, the argument that the prosecutor improperly

24   injected his own opinion into his closing argument in the penalty phase of the trial.

25   *See id.* at 39-45. Therefore, to the extent that Snow claims that his appellate counsel

26   was ineffective, on his direct appeal, for failing to raise the argument that the prosecutor

27   improperly injected his own opinion into his closing argument in the penalty phase of the

28   trial, Claim 16 is not procedurally defaulted.

1

2          **6.      Claim 9**

3          In Claim 9, Snow claims that his constitutional rights were violated "due to the

4   trial court's exclusion of the exculpatory testimony from Terry Hardaway and David

    Springfield." Second Amended Petition, p. 90.[6]

5          Snow raised Claim 9 in his first state habeas action, but abandoned it on the

6   appeal in that action.  *See* Petition for Writ of Habeas Corpus, Respondents' Exhibit 4,

7   p. 10, item 27; Brief of Appellant, Respondents' Exhibit 6a. Snow argues that the

8   ineffectiveness of his trial counsel in failing to offer alternative grounds for the admission

9   of the testimony of Hardaway and Springfield, and for failing to offer their testimony at

10  the penalty phase, as alleged in Claim 10D, constitutes cause for his procedural default

11  of Claim 9. This argument is meritless. Snow's claim of ineffective assistance of trial

12  counsel in this regard does not explain his delay from the time of his trial until 2008

13  before raising Claim 9 in his fourth state habeas action.  Claim 9 is barred from litigation

14  in this federal habeas action by the procedural default doctrine.

15         **7.      Claim 10B**

16         In Claim 10B, Snow claims that his trial counsel was ineffective for "completely

17  abandoning his role as advocate for Mr. Snow" during penalty phase closing arguments.

18  Second Amended Petition, p. 100.  Snow asserts, and the Court finds, that Claim 10B

19  was raised on the appeal in his first state habeas proceeding, and is, therefore, not

20  procedurally defaulted. *See* Brief of Appellant, Respondent's Exhibit 6a, pp. 101-04.

21  ///

22  ///

23

24         [6]Claim 10D is closely related to Claim 9. Snow claims in Claim 10D that his trial
    counsel was ineffective "for failing to offer alternative grounds for the admission of the
    testimony of Mr. Hardaway and Mr. Springfield, and for failing to offer their testimony at
25  the penalty phase."  Second Amended Petition, p. 108.  Respondents do not assert the
    procedural default defense with respect to Claim 10D.  The court notes that Snow did,
26  on the appeal in his first state habeas action, claim that his trial counsel was ineffective
    for not offering additional grounds for admission of the testimony of Hardaway and
27  Springfield during the guilt phase of his trial, and for not offering the testimony of
    Hardaway and Springfield during the penalty phase of his trial.  *See* Brief of Appellant,
28  Respondents' Exhibit 6a, pp. 70-78.  Claim 10D is not procedurally defaulted.

### 8.   Claim 10F

In Claim 10F, Snow claims that his trial counsel was ineffective "for failing to properly object and move for a hearing regarding *ex parte* communications and misconduct by juror Buchanan." Second Amended Petition, p. 114. Snow asserts that Claim 10F was raised on the appeal in his first state habeas proceeding, and is, therefore, not procedurally defaulted. Opposition to Motion to Dismiss, p. 58. However, on the appeal in his first state habeas proceeding, the question of counsel's handling of juror Buchanan's conduct was raised as only an issue of ineffective assistance of appellate counsel – not ineffective assistance of trial counsel. *See* Brief of Appellant, Respondent's Exhibit 6a, pp. 50-56. Claim 10F is procedurally defaulted.

### 9.   Claim 10H

In Claim 10H, Snow claims that his trial counsel was ineffective "for failing to impeach Sally Cook's testimony regarding the height of the hit man." Second Amended Petition, p. 115. Snow asserts that Claim 10H was raised on the appeal in his first state habeas proceeding, and is, therefore, not procedurally defaulted. Opposition to Motion to Dismiss, p. 58. However, Snow does not point to, and the Court does not see, any argument in his briefing on the appeal in his first state habeas action where he raised the same claim that is raised in this case as Claim 10H. Claim 10H is procedurally defaulted.

### 10.   Claim 10K

In Claim 10K, Snow claims that his trial counsel was ineffective "for failing to investigate or present any mitigating evidence at Mr. Snow's capital sentencing hearing." Second Amended Petition, p. 120.

In the appeal in his first state habeas action, Snow raised a claim that his trial counsel was ineffective because he "failed to present evidence that petitioner had once saved the life of a prison guard, and evidence that in the past, two physicians had stated their opinion that petitioner was legally insane." Brief of Appellant, Respondent's Exhibit 6a, pp. 86-100. Therefore, Claim 10K is not procedurally defaulted to the extent

1   Snow asserts in 10K that his trial counsel was ineffective for failing to present such

2   evidence.  The remainder of Claim 10K is procedurally defaulted.

3               **11.    Claim 10N**

4               In Claim 10N, Snow claims that his trial counsel was ineffective "for failing to

5   investigate and raise Claims Three through Nine, Twelve through Fifteen, Nineteen and

6   Twenty."  Second Amended Petition, p. 130.

7               Respondents argue that Claim 10N is procedurally defaulted, except to the

8   extent that Snow claims that his trial counsel was ineffective for failing to object to

9   improper closing argument of the prosecutor as was alleged on appeal in his first state

10  habeas action.  *See* Motion to Dismiss, p. 69.  On the appeal in his first state habeas

11  action, Snow asserted a claim that his trial counsel was ineffective for failing to raise

12  any issue regarding the prosecutor improperly injecting his own opinion into his closing

13  argument in the penalty phase of the trial.  *See* Brief of Appellant, Respondents' Exhibit

14  6a, pp. 39-45.  Therefore, to the extent that Snow claims, in Claim 10N, that his trial

15  counsel was ineffective for failing to raise any issue regarding the prosecutor improperly

16  injecting his own opinion into his closing argument in the penalty phase of the trial,

17  Claim 10N is not procedurally defaulted.  The remainder of Claim 10N is procedurally

18  defaulted.

19              **12.    Claim 11**

20              In Claim 11, Snow claims that his constitutional rights were violated "because of

21  the trial court's failure to properly instruct the jury concerning the weight to be given

22  accomplice testimony."  Second Amended Petition, p. 131.

23              Snow asserts, and the Court finds, that Snow raised Claim 11 in his second state

24  habeas action, which was initiated October 26, 1987. *See* Supplemental Petition for Writ

25  of Habeas Corpus, Petitioner's Exhibit 227, p. 7.  The claim was, however, dismissed by

26  the state district court, and, before Snow could file an opening brief on appeal, the

27  Nevada Supreme Court affirmed, finding the claim barred as a successive petition,

28  under NRS 34.810. *See* Order Dismissing Appeal, Respondents' Exhibit 11.  NRS

34.810, however, was inadequate to support the defense of procedural default. *See Valerio v. Crawford*, 306 F.3d 742, 777-78 (9th Cir. 2002). Therefore, Claim 11 is not procedurally defaulted.

### 13.    Claim 12A

In Claim 12A, Snow claims that his constitutional rights were violated by a jury instruction given by the court regarding premeditation and deliberation. Second Amended Petition, pp. 133-35.  The jury instruction that Snow challenges is known as the "*Kazalyn* instruction," after *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992).

Snow argues that the statute of limitations prescribed by NRS 34.726 is inadequate to support the procedural default of a claim regarding the *Kazalyn* instruction, because the Nevada Supreme Court has, on several occasions applied a special limitations period to such claims, and has, in some of those cases, reached the merits of the challenge to the *Kazalyn* instruction.  *See* Opposition to Motion to Dismiss, pp. 90-91. Snow quotes from *Doleman v. State*, 2011 WL 221912 (Nev., Jan. 13, 2011):

> Because it is the substantive holdings of [*Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007)] and [*Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000)] that appellant seeks to apply in this case, it is those cases that provide the marker for filing timely claims.

*Doleman v. State*, 2011 WL 221912, at 1 (Nev., Jan. 13, 2011); *see also Green v. Palmer*, 2010 WL 5239191, at 1 (Nev., Dec. 10, 2010), *Herrera v. State*, 2010 WL 4537128, at 1 (Nev., Nov. 8, 2010), *Jones v. State*, 2010 WL 3860441, at 1 n.4 (Nev., Sep. 29, 2010), *Guerrero v. State*, 2010 WL 3554312, at 2 (Nev., Sep. 10, 2010), *Klein v. State*, 2010 WL 3502815, at 1 (Nev., July 15, 2010), *Jamison v. State*, 2010 WL 3488529, at 1 (Nev., June 10, 2010), *Ducksworth v. State*, 2010 WL 3315877, at 1 (Nev., June 9, 2010), *Tinch v. State*, 2010 WL 3502705, at 1 (Nev., June 9, 2010), *Carpino v. State*, 2010 WL 3502752, at 1 (Nev., June 9, 2010), and *Burriola v. State*, 2010 WL 3492123, at 2 (Nev., May 7, 2010). Snow also cites the following cases in which the petitioners filed their claims challenging the *Kazalyn* instruction within one (1) year after the *Polk* decision − by September 11, 2008 − and he claims the court

adjudicated their claims on the merits:  *Winfrey v. State*, 2011 WL 222250, at 1 (Nev., Jan. 13, 2011), *Nellums v. State*, 2011 WL 486606, at 1 (Nev., Feb. 9, 2011), *Witter v. State*, 2010 WL 4673531, at 1-2 (Nev., Nov. 17, 2010), *Gaston v. State*, 2009 WL 3711916, at 1-2 (Nev., Nov. 3, 2009), *Berry v. State*, 2009 WL 3192937, at 1-2 (Nev., Sep. 23, 2009). In fact, the Nevada Supreme Court did not reach the merits of the challenge to the *Kazalyn* instruction in *Winfrey, Nellums*, *Witter*, *Gaston*, or *Berry*, or in any of the other cases cited by Snow. Contrary to Snow's characterization of those cases, in each case the Nevada Supreme Court applied the procedural bar, and declined to reach the merits. The Court finds that, under *Bennett v. Mueller*, Snow has failed to carry his burden to place the procedural default defense at issue "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *See Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). Claim 12A is procedurally defaulted.

### 14.    Claim 19

In Claim 19, Snow claims that his constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of [Mr. Snow's] right to the effective assistance of counsel." Second Amended Petition, p. 160.  This is a cumulative error claim.  The Court finds that it is not procedurally defaulted to the same extent that the claims it incorporates are not procedurally defaulted. Therefore, Claim 19 is not barred by the procedural default doctrine.

### 15.    Claim 20

In Claim 20, Snow claims that his "death sentence is invalid under the state and federal constitutional guarantees of due process, equal protection, and a reliable sentence because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments." Second Amended Petition, p. 162. Snow argues that, in light of the holding of the Nevada Supreme Court in *McConnell v. State*,

1   125 Nev. 243, 212 P.3d 307 (2009), the state courts do not provide a forum in which to

2   litigate this claim. Opposition to Motion to Dismiss, pp. 103-04. This argument is well-

3   taken.  Challenges to the lethal injection protocol are not cognizable in Nevada state

4   habeas actions.  *See McConnell*, 125 Nev. at 247-49, 212 P.3d at 309-11. This Court,

5   therefore, will not require exhaustion of that claim, and, consequently, the procedural

6   default doctrine cannot be applied. *See* 28 U.S.C. § 2254(b)(1)(B)(i) and (ii).

7

8   **V.   SNOW'S REQUEST FOR AN EVIDENTIARY HEARING ON PROCEDURAL DEFAULT ISSUES**

9   In his motion for evidentiary hearing, and the reply he filed in support of that

10  motion, Snow requests an evidentiary hearing with respect to certain factual matters

11  related to the procedural default issues raised by the motion to dismiss.

12  Snow requests an evidentiary hearing concerning his argument that he can show

13  cause and prejudice for his procedural default of Claims 1, 2, 6, and 20, because of the

14  delay in his discovery of the factual bases for those claims. Motion for Evidentiary

15  Hearing, pp. 5-7. With respect to Claim 20, the Court rejects the procedural default

16  defense, because Snow has shown that challenges to the lethal injection protocol are

17  not cognizable in Nevada state habeas actions (*see* discussion, *supra*, regarding Claim

18  20); therefore, an evidentiary hearing is not necessary on this issue.  With respect to

19  Claims 1 and 2, the Court found that the record was clear, and the Nevada Supreme

20  Court ruled, that the subject material was discovered years before Snow initiated his

21  fourth state habeas action, and that there was, consequently, no showing of cause and

22  prejudice.  *See* discussion, *supra*, regarding Claims 1 and 2.  Similarly, with respect to

23  Claim 6, the Court takes as true Snow's assertion regarding when he discovered the

24  factual basis of the claim. *See* discussion, *supra*, regarding Claim 6.  There is no factual

25  dispute, and no need for an evidentiary hearing, with regard to these issues.

26  Snow also requests an evidentiary hearing concerning his argument that he can

27  show cause and prejudice for the procedural default of his ineffective assistance of trial

28  counsel claims in Claim 10, because of ineffective assistance of counsel in his first state

habeas action. *See* Motion for Evidentiary Hearing, pp. 7-8. With regard to that argument, however, the Court rules that ineffective assistance of Snow's first state post-conviction counsel cannot explain the long delay that led to Snow's default under NRS § 34.726, with regard to Snow's claims of ineffective assistance of trial counsel, and that there is an insufficient causal connection between the alleged ineffective assistance of Snow's first post-conviction counsel and the procedural default at issue in this case. *See* discussion, *supra*, regarding Snow's claims of ineffective assistance of trial counsel. This ruling does not turn on any question of fact; there is no need for an evidentiary hearing on this issue.

Snow also requests an evidentiary hearing concerning his argument that he can show cause and prejudice for his procedural default of Claims 3, 5, and 8, because of the ineffective assistance of counsel on his direct appeal. *See* Motion for Evidentiary Hearing, pp. 8-9. The Court finds that Claim 3 is not procedurally defaulted. *See* discussion, *supra*, regarding Claim 3. With respect to Claims 5 and 8, the Court rules that Snow's claim of ineffective assistance of counsel on his direct appeal does not explain his delay from 1985 to 2008, before he raised Claims 5 and 8 in his fourth state habeas action; and, with regard to Claim 5, the Court rules that Snow's claim of ineffective assistance of counsel on his direct appeal does not explain the abandonment of this claim on appeal in his first state habeas action. *See* discussions of Claims 5 and 8, *supra*. These rulings do not turn on any question of fact; there is no need for an evidentiary hearing on these issues.

## VI.  SUMMARY OF THE COURT'S RULINGS

The Court, then, rules that the following of Snow's claims are barred by the statute of limitations: 2, 5, 6, 10B, 10F, 10G, 10I, 10J, 10L (to the extent it concerns the jury instruction regarding premeditation and the lack of a jury instruction regarding the requirement that aggravating circumstances be found unanimously by the jury), 10M (to the extent it concerns the lack of a jury instruction regarding the requirement that aggravating circumstances be found unanimously by the jury), 10N (to the extent it is

1  based on trial counsel's failure to raise Claims 5, 6, 12A, 13B, 13C, 19, and 20), 12A,

2  13B, 13C, 16 (to the extent it is based on appellate counsel's failure to raise Claims 5,

3  6, 12A, 13B, 13C, 19, and 20), 17, 18, 20, and 21.

4       The Court rules that the following of Snow's claims are barred by the procedural

5  default doctrine:  1A, 1B, 1C, 1D, 1E, 2, 5, 6, 7, 8, 9, 10A, 10C, 10E, 10F, 10G, 10H,

6  10I, 10J, 10K (except to the extent Snow claims that his trial counsel was ineffective for

7  failing to present evidence that Snow had once saved the life of a prison guard, and

8  evidence that in the past two (2) physicians had stated their opinion that Snow was

9  legally insane), 10L, 10M, 10N (except to the extent that Snow claims that his trial

10  counsel was ineffective for failing to raise the claim in Claim 8 that the prosecutor

11  improperly injected his own opinion into his closing argument in the penalty phase of the

12  trial), 12A, 12B, 13A, 13B, 13C, 15, 16 (except to the extent that Snow claims that his

13  appellate counsel was ineffective on his direct appeal for failing to raise Claims 3 and 5,

14  and the claim in Claim 8 that the prosecutor improperly injected his own opinion into his

15  closing argument in the penalty phase of the trial), 17, 18, and 21.

16       The following of Snow's claims are, therefore, subject to dismissal, either on

17  statute of limitations grounds, procedural default grounds, or both:  1A, 1B, 1C, 1D, 1E,

18  2, 5, 6, 7, 8, 9, 10A, 10B, 10C, 10E, 10F, 10G, 10H, 10I, 10J, 10K (except to the extent

19  Snow claims that his trial counsel was ineffective for failing to present evidence that

20  Snow had once saved the life of a prison guard, and evidence that in the past two (2)

21  physicians had stated their opinion that Snow was legally insane), 10L, 10M, 10N

22  (except to the extent that Snow claims that his trial counsel was ineffective for failing to

23  raise the claim in Claim 8 that the prosecutor improperly injected his own opinion into

24  his closing argument in the penalty phase of the trial), 12A, 12B, 13A, 13B, 13C, 15, 16

25  (except to the extent that Snow claims that his appellate counsel was ineffective on his

26  direct appeal for failing to raise Claim 3, and for failing to raise the claim in Claim 8 that

27  the prosecutor improperly injected his own opinion into his closing argument in the

28  penalty phase of the trial), 17, 18, 20, and 21.

1  **VII.    CONCLUSION**

2        IT IS THEREFORE ORDERED that respondents' Motion to Dismiss (dkt. no.

3  146) is GRANTED IN PART AND DENIED IN PART. The following claims in petitioner's

4  second amended habeas corpus petition (dkt. no. 137) are dismissed: Claim 1A, 1B,

5  1C, 1D, 1E, 2, 5, 6, 7, 8, 9, 10A, 10B, 10C, 10E, 10F, 10G, 10H, 10I, 10J, 10K (except

6  to the extent Snow claims that his trial counsel was ineffective for failing to present

7  evidence that Snow had once saved the life of a prison guard, and evidence that in the

8  past two (2) physicians had stated their opinion that Snow was legally insane), 10L,

9  10M, 10N (except to the extent that Snow claims that his trial counsel was ineffective for

10  failing to raise the claim in Claim 8 that the prosecutor improperly injected his own

11  opinion into his closing argument in the penalty phase of the trial), 12A, 12B, 13A, 13B,

12  13C, 15, 16 (except to the extent that Snow claims that his appellate counsel was

13  ineffective on his direct appeal for failing to raise Claim 3, and for failing to raise the

14  claim in Claim 8 that the prosecutor improperly injected his own opinion into his closing

15  argument in the penalty phase of the trial), 17, 18, 20, and 21.  In all other respects, the

16  motion to dismiss is denied.

17        IT IS FURTHER ORDERED that petitioner's Motion for an Evidentiary Hearing

18  (dkt. no. 159) is DENIED.

19        IT IS FURTHER ORDERED that respondents shall file an answer within ninety

20  (90) days from the entry of this order, responding to the remaining claims in petitioner's

21  second amended habeas corpus petition (dkt. no. 137), which are Claims 3, 4, 10D,

22  10K (to the extent Snow claims that his trial counsel was ineffective for failing to present

23  evidence that Snow had once saved the life of a prison guard, and evidence that in the

24  past two physicians had stated their opinion that Snow was legally insane), 10N (to the

25  extent that Snow claims that his trial counsel was ineffective for failing to raise the claim

26  in Claim 8 that the prosecutor improperly injected his own opinion into his closing

27  argument in the penalty phase of the trial), 11, 14, 16 (to the extent that Snow claims

28  that his appellate counsel was ineffective on his direct appeal for failing to raise Claim 3,

1    and for failing to raise the claim in Claim 8 that the prosecutor improperly injected his

2    own opinion into his closing argument in the penalty phase of the trial), and 19.

         DATED THIS 12th day of September 2013.

                  MIRANDA M. DU
                  UNITED STATES DISTRICT JUDGE